[S. F. No. 15377. In Bank.—October 29, 1935.]

BURON FITTS et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

[L. A. No. 14976. In Bank.—October 29, 1935.]

GEORGE G. GREGORY et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Walter K. Tuller, Joseph Scott, Roland G. Swaffield, Jerry Giesler, Jack Gilchrist, Harold Judson, Byron C. Hanna and H. P. Bledsoe for Petitioners.

Everett W. Mattoon, County Counsel, S. V. O. Prichard, Deputy County Counsel, and Clyde C. Shoemaker, Special Counsel, for Respondent.

WASTE, C. J. — Petitioners seek writs of prohibition, directed to the respondent Superior Court, to stay further proceedings therein in connection with or based upon certain indictments found and presented against them by the grand jury of Los Angeles County during the year 1934. Subsequent to the return of said indictments and prior to the entry of pleas thereto, the petitioners filed in the respondent court certain motions by which it was sought to quash and set aside the indictments. At the hearings upon these several motions an abundance of evidence was adduced by the petitioners in an effort to support their contentions that the indictments were void and of no effect because found and returned by an invalid and unconstitutionally organized grand jury. The people opposed the motions to quash and offered evidence which conflicted in many material respects with that introduced by the petitioners. Thereafter the several motions were denied by the respondent court. These proceedings in prohibition followed. Because of the many issues common to both proceedings, we have consolidated them for the purposes of this opinion. In passing upon these common points we shall consider the full record presented thereon in each proceeding. Any issues peculiar to either of said proceedings shall, of course, receive separate consideration upon such portions of the respective records particularly applicable thereto.

The respective petitions contain the same grounds as a basis for a writ of prohibition upon which, in the respondent court, the petitioners moved to quash and set aside the indictments because of their asserted invalidity. Considered individually, or collectively, these attacks upon the indictments, though many and varied, have one main objective, namely, the establishment of the contention that they were found and returned by a body of persons styled a grand jury that was neither in law nor in fact a valid, constitutional grand jury.

At this point we shall generally state petitioners' several contentions having to do with the asserted improper impanelment of the grand jury. In support of their position that the 1934 grand jury of Los Angeles County had no valid existence and that the indictments returned by it against petitioners are void, it is urged (a) that the grand jury list for that year was not prepared in substantial compliance with the provisions of sections 204d and 206 of the Code of Civil Procedure in that

the order establishing the same was not the act of a majority of the judges of the respondent court and that the names appended thereto were not apportioned among the several wards and townships as required by law; (b) that the judges entrusted with the duty of impaneling the grand jury were biased and prejudiced not only as to the type of person who should be selected for service upon the grand jury or excused, regardless of questions of legal qualification, disqualification, exemption or excuse, but were also biased and prejudiced against the requirement of the law that a grand jury be selected by lot; (c) that the judges who presided over and impaneled the grand jury were biased and prejudiced against petitioners, or some of them; (d) that the grand jury was not impaneled in open court, or by the court, but was impaneled, for the most part, by the judges acting in chambers and out of court; (e) that the judges entrusted with the duty of impaneling the grand jury invited, received and considered information out of court, in private, and without the sanction of an oath, touching upon the fitness of the persons whose names had been drawn from the grand jury box as prospective grand jurors; and (f) that as a result of the foregoing the petitioners were denied the equal protection of the laws and due process of law in violation of the state and federal constitutions.

Preliminarily it should be noted that no challenge is made to the panel or to the individual members of the grand jury. Indeed, such a challenge is not permitted since the 1911 amendment of section 995 of the Penal Code. We mention in passing that petitioners expressly disclaim any contention that the members of the grand jury, individually or collectively, were lacking in the qualifications essential to the office or were biased or prejudiced toward petitioners, or any of them. The attack is launched solely at the method of their selection and impanelment. We therefore direct our attention to the contentions above outlined. Other contentions, touching upon the functioning, rather than the impaneling of the grand jury, and having to do with the asserted appearance of an unauthorized person before that body and with certain alleged prejudicial misconduct in its presence upon the part of special counsel regularly appointed to assist it, will receive consideration later in the opinion.

■ At the threshold of any discussion of the several attacks upon the methods adopted for the selecting, drawing and impaneling of the grand jury that returned the indictments against petitioners, we are confronted with the preliminary, yet fundamental, issue having to do with the propriety of the remedy of prohibition under the circumstances here presented. We cannot agree with the petitioners that prohibition is available to them in their assault upon the formation of the grand jury. There can be no dissent from the proposition that the respondent Superior Court, acting upon the motions presented to it by the petitioners in the causes therein pending against petitioners, had jurisdiction to determine, correctly or erroneously, on the evidence before it, whether the grand jury had been properly selected, drawn and impaneled. If the respondent court had jurisdiction to determine these several matters, an erroneous determination thereof, even if conceded, would not serve to oust it of jurisdiction or constitute an excess of jurisdiction so as to warrant the issuance of a writ of prohibition to restrain it from proceeding further in the premises.

■ The sole question which is presented or may be considered in a proceeding upon a writ of prohibition is one of jurisdiction. In the language of section 1102 of the Code of Civil Procedure, the office of the writ is to arrest "the proceedings of any tribunal, corporation, board or person, exercising judicial functions, when such proceedings are without, or in excess of the jurisdiction of such tribunal, corporation, board or person". In this state, generally speaking, the rule has been strictly adhered to that neither prohibition, nor any other writ, the sole object of which is to try the question of jurisdiction, can be made to subserve the purposes of a writ of error or be extended in its corrective scope to the review of errors of law committed by any "tribunal, corporation, board or person", in a proceeding of which such "tribunal, corporation, board or person", has jurisdiction under the law. This doctrine has been declared in numerous decisions. (*Pacific States Sav. & L. Co.* v. *Superior Court*, 217 Cal. 517, 521 [19 Pac. (2d) 977]; *United Sec. Bank & Trust Co.* v. *Superior Court*, 205 Cal. 167, 174 [270 Pac. 184]; *Holland* v. *Superior Court*, 121 Cal. App. 523, 525 [9 Pac. (2d) 531]; *In re Hatch*, 9 Cal. App. 333, 334, 335 [99 Pac. 398]; *Borello* v. *Superior Court*, 8 Cal. App. 215, 218 [96 Pac. 404].)

██ . In so concluding, we are of the view that the circumstances giving rise to these proceedings are readily distinguishable from those involved in *Bruner* v. *Superior Court,* 92 Cal. 239 [28 Pac. 341], relied on by the petitioners, in that the indictments returned by the grand jury against petitioners conferred jurisdiction upon the respondent court, even though it be assumed, without deciding, that the grand jury that returned the same was selected and impaneled in the manner alleged by petitioners. We are not to be understood as condoning or approving the above enumerated methods and practices alleged to have been resorted to in the impanelment of the grand jury. It is our view that such practices, assuming they occurred, would not affect the jurisdiction of the respondent court to try the petitioners thereon.

In *Bruner* v. *Superior Court, supra,* upon which petitioners rely, the petitioner procured a writ of prohibition restraining the Superior Court from proceeding further against him upon certain purported indictments alleged to have been returned by a body of men that had no legal existence as a grand jury. The decision in that case was by a divided court, three of the justices dissenting. We are not inclined to extend the rule of that case beyond the peculiar facts to which it was there applied. In our opinion, the Bruner case presented a factual situation distinguishable from the one here involved. It was there admitted that the court charged with the duty of impaneling the grand jury, had, in complete disregard of statutory provisions to the contrary, appointed an elisor to summon certain of the grand jurors, in the absence of a showing that the sheriff was disqualified to perform that duty. The elisor summoned nine persons whom the court accepted and seated as grand jurors. Under the admitted facts of that case, it may be said that the appointment of the so-called elisor was without and in excess of the jurisdiction of the court. An elisor should not have been appointed unless and until the disqualification of the sheriff was made to appear. In effect, it was therefore held in that case by a majority of the justices that the nine persons summoned by the elisor were mere intruders and that consequently the grand jury was without semblance of authority, and any indictment returned by it was a nullity and failed to confer jurisdiction upon the Superior Court to try the petitioner.

A reading of the Bruner case indicates that it was not decided upon any theory of error or irregularity in the proceedings leading to the impanelment of the grand jury, but that it was based upon the admitted total absence of an essential jurisdictional fact (a finding that the sheriff was disqualified) requisite to the organization of a valid grand jury through the instrumentality of an elisor. Had the court there charged with the duty of impaneling the grand jury found that the sheriff was disqualified, upon a consideration of facts tending but actually insufficient to support such conclusion, we are satisfied there would not have been an excess of jurisdiction warranting the issuance of a writ of prohibition. In the latter event, there would have been merely error in the procedure leading to the impanelment of the grand jury, precluding the issuance of a writ of prohibition.

 Mere irregularities, as distinguished from jurisdictional defects, occurring in the formation of a grand jury will not justify a court declaring an indictment a nullity. (*People* v. *Murphy,* 71 Cal. App. 176, 180 [235 Pac. 51].) The true distinction lies between the acts of a body having no semblance of authority to act, and of a body which, though not strictly regular in its organization, is, nevertheless, acting under a color of authority. (*In re Gannon,* 69 Cal. 541 [11 Pac. 240] ; *People* v. *Southwell,* 46 Cal. 141, 150; *People* v. *Leonard,* 106 Cal. 302 [39 Pac. 617] ; *In re Hatch, supra,* 335; *People* v. *Petrea,* 92 N. Y. 128.)

 In our opinion, the Bruner case comes within the former category, while the present case comes within the latter. Disregarding for the present, all conflicts in the evidence and conceding petitioners' many assaults upon the indictments, it cannot be said that the grand jury that returned the indictments against petitioners had no semblance of authority, or acted without color of lawful right. In other words, accepting petitioners' contentions at their face value, it must be held, under the authorities last above cited, that the grand jury was at least a *de facto* grand jury. That the proceedings and acts of a *de facto* grand jury are valid and entitled to full credit, is settled by the cited cases. Quoting briefly from *In re Gannon, supra,* we find it there stated that ''it is therefore sufficient to maintain the authority of a grand jury that it has acted under color of lawful authority. An in-

dictment found by a *de facto* grand jury is as regular as one found by a *de jure* grand jury.''

''Here, as distinguished from the Bruner case, the attacks made by petitioners, fail to show the absence of any essential jurisdictional fact in the organization of the grand jury. On the contrary, and even if it be conceded that the several matters of which complaint is made actually occurred in the manner contended, they would constitute but a series of irregularities or errors insufficient in character to amount to an excess of jurisdiction in the impanelment of the grand jury and insufficient to deprive the respondent court of jurisdiction to try petitioners on the indictments returned against them.

 In view of what has been said, petitioners' assaults upon the methods alleged to have been employed in the selecting, drawing and impaneling of the grand jury, even if substantiated, would not warrant the issuance of a writ of prohibition under the circumstances here involved. We do not propose to discuss the many cases cited by petitioners in support of a contrary conclusion. While many of them involved issues somewhat similar in character to those here involved, they were presented under varying factual situations.

There is nothing in *Terrill* v. *Superior Court*, 6 Cal. Unrep. 398 [60 Pac. 38], opposed to our conclusion herein. In that case a demurrer to the indictment was allowed whereupon the court made an order resubmitting the matter to the same grand jury which had found the original indictment. In applying for a writ of prohibition to restrain his trial upon the second indictment, petitioner relied upon section 1008 of the Penal Code which then provided that if a demurrer be allowed it is a bar to another prosecution, unless the court ''directs the case to be submitted to another grand jury. . . . '' It was correctly held in that case that the order allowing the demurrer was a bar to another prosecution by the same grand jury. In other words, the same grand jury was clearly without jurisdiction to reindict the petitioner. This jurisdictional defect brought the case within the rule of the Bruner case, to which reference was there made. However, it is significant to note that the decision in the Terrill case, *supra*, recognizes the rule applied in the present case. The opinion declares, in part: ''This is not a case where a grand jury, irregularly impaneled, acting under the semblance of

right and lawful authority, but in the procedure affording every advantage to the accused he would have enjoyed had the proceedings been regular, has presented an accusation to a court having jurisdiction to try him. . . . Nor is it an irregular assemblage of men legally qualified to act, and who do act, under the control of the proper court. Here the grand jury had no authority to act at all in the matter. The jurors were not qualified to act, and that fact was a matter of record. . . . '' The decision in that case is placed upon the correct principle that the body of men that found the indictment, under the provisions of the statute, had no power to act. That is not the present case.

Nor do we think the contentions touching upon the functioning rather than the impaneling of the grand jury, even if presently conceded to have merit, would warrant the issuance of a writ of prohibition. In this connection it is urged that while the grand jury was in session determining whether charges should be filed against petitioners, or some of them, it permitted an unauthorized and ineligible person to appear before it and make certain unsworn statements regarding such inquiry, in violation of section 925 of the Penal Code. The present case is distinguishable from the case of *Husband* v. *Superior Court*, 128 Cal. App. 444 [17 Pac. (2d) 764], relied on by petitioners. In the cited case an unauthorized person was present before the grand jury during the taking of evidence which resulted in the indictment there assailed. The record in the present case indicates that the grand jury was not engaged in the actual investigation of the office of the district attorney and did not receive any evidence or engage in any deliberations in the presence of the asserted unauthorized person but was, at the time of which complaint is made, concerned solely with the preliminary matter of determining whether the appointment of special counsel was advisable or necessary. However, aside from the factual distinction that exists between the present case and the Husband case, *supra*, we have grave doubts as to the propriety of the holding in that case which permits the issuance of a writ of mandate to compel the dismissal of an indictment upon the ground that an unauthorized person appeared before the grand jury, in violation of section 925, *supra*, during the hearings on the charges leading to the indictment. Since the denial of a hearing in the Husband case,

we have had this identical question before us in the application of *Haight and Kemp* v. *Superior Court,* S. F. 14921, wherein we denied an application for a writ of mandate to compel the dismissal of an indictment because of the alleged improper appearance of unauthorized persons before the grand jury. We were then of the opinion, which we still maintain, that it would be a dangerous precedent, under such circumstances, to allow a writ of mandate, or other prerogative writ, to be used to inquire into the regularity of every indictment returned by a grand jury. This reasoning is in line with the holding of this court in *People* v. *Delhantie,* 163 Cal. 461, 465 [125 Pac. 1066], wherein it is declared: "The *jurisdiction* of the superior court was not dependent upon compliance with the provisions of section 925 of the Penal Code. It obtained jurisdiction of the cause for all purposes by reason of the presentation by the grand jury of the indictment charging defendant with the crime of murder alleged to have been committed in Marin County."

It is next urged that special counsel in summing up the evidence for the grand jury before the return of the indictments against petitioners, or some of them, resorted to inflammatory arguments and demanded that indictments be returned. His conduct is condemned as constituting an illegal influence that served to invalidate the indictments. Misconduct on the part of special counsel, even if conceded to exist, would not present anything of a jurisdictional character warranting the issuance of a writ of prohibition. At the most, it would constitute but an irregularity in the proceedings leading to the return of the indictments and would not invalidate the same.

What has been said under the preceding point applies equally to the contention that the judge who presided over the grand jury had participated in certain "activities" having to do with preliminary investigations, the employment of investigators, the publishing of an asserted vicious and scurrilous document attacking the petitioner Fitts, which is said to have been handed to the members of the grand jury, and other matters too numerous to mention.

The foregoing adequately disposes of the principal contentions of the petitioners. Other matters not herein specifically referred to do not call for the issuance of a writ of prohibition.

The respective applications are denied and the alternative writs heretofore issued are, and each is, discharged.

Shenk, J., Thompson, J., and Langdon, J., concurred.

CURTIS, J., Concurring.—I concur in the judgment with the greatest reluctance. I am satisfied, in view of the provisions of our codes and the decisions of this and our appellate courts relative to the selection and empanelment of grand juries, no different result could be reached from that which is set forth in the opinion signed by a majority of this court. It is apparent from the authorities cited that prohibition will not lie to restrain the trial of the petitioners upon the indictments found by the grand jury, as the members thereof were regularly summoned into court, after their names had been drawn from the grand jury box, where they had been deposited in pursuance of the law governing the selection and returning of grand jurors. (Code Civ. Proc., secs. 204 to 211.) The jury, therefore, was lawfully drawn and all members thereof were eligible to act, provided they met the qualifications fixed by law.

The method employed by the trial court in the selection and empanelment of the grand jury, which found the indictments against petitioners, was so unusual and unprecedented and so fraught with gravest dangers that it is a matter of regret with me that there is not to be found some legal authority whereby the courts might declare all acts of a jury so selected absolutely void, including the indictments against petitioners. There is no dispute as to the manner in which said grand jury was selected and empaneled. In response to an order of the trial court directing a grand jury to be drawn for the year 1934, twenty-eight prospective jurors appeared in court at the time and place fixed by the court for the empanelment of said jury. These prospective jurors were sworn in open court to answer questions as to their qualifications to act as such jurors, whereupon the court declared a recess and the trial judge repaired to his chambers with the court reporter where he interrogated each prospective juror behind closed doors and without the hearing of any person whatever, except himself the reporter and the juror under examination. The questions of the trial judge related not only to the qualifications of the juror, but they went far

afield into the private life of the juror under examination and into matters entirely foreign to his qualifications to act as a juror. He was asked as to his business connections, his financial status, his political affiliations, his fraternal connections and, in some instances, his religious beliefs. After being so examined each juror, with the exception of four who had been excused during the examination, was told to return to court one week hence. On the day fixed the twenty-four of the panel who had not been excused returned to court. After calling the roll the trial judge announced that he desired to interview all of them again in his chambers and that he had asked the presiding judge of the court to sit with him during said examination. Whereupon the trial judge, the presiding judge and the court reporter repaired to the chambers of the trial judge where each member of the panel was separately called into the judge's chambers and there again examined as before, although not as minutely or extensively yet upon the same general matters as were gone into in his previous examination. This examination was also held behind closed doors, and the only persons present beside the juror under examination were the trial judge, the presiding judge and the court reporter. At the conclusion of this examination the trial judge resumed his seat upon the bench and called the names of sixteen of the prospective jurors and ordered them to return to court one week from that day. At the same time he announced that those of the panel whose names had not been called were excused. Eight were thus excused. No reason whatever was given at the time by the trial judge why any of said persons was excused from service upon said jury. At this same session of court the trial judge made an order for the drawing of twelve additional jurors from the grand jury box to complete the number required for a legal grand jury of nineteen. This order was complied with and the list of persons whose names were drawn was delivered to the sheriff for service, together with an order that the persons so served appear in court one week from that day. On the day appointed the trial judge, after having those on the new panel sworn to answer questions regarding their qualifications, announced that he had asked the presiding judge of said court to sit with him during the further empaneling of the jury, and directed that each member of the new panel, one at a time, come into his chambers where the presiding judge ''and my-

self will question and discuss the matter with you in chambers''. Whereupon the trial judge announced a recess of court, and the presiding judge, the trial judge and the court reporter repaired to the chambers of the trial judge, where the two judges examined each member of the new panel in substantially the same manner and concerning the same matters as the members of the original panel had been examined. At the close of this examination the trial judge assumed his seat upon the bench and announced that of the sixteen persons of the original panel two had been excused. He then directed the clerk to put into the jury box the names of seven members of the new panel and to withdraw therefrom five names. This was done, and an order was made that the fourteen persons from the original panel and five from the new panel constitute the grand jury of said county for the year 1934.

In criticizing the method of selecting and empaneling the grand jury employed by the trial judge, I do not wish to be put in the position of impugning the motives or questioning the integrity of either the presiding or trial judge. They may have been, and I believe were, actuated by the best intentions and purest motives, and their sole object in pursuing the method employed by them was to secure an impartial and fearless body of men as a grand jury who would meet and handle a serious situation which these judges evidently believed to exist within their county. But the method employed in the selection of this jury in the hands of a less scrupulous official would make it possible for him to hand pick a jury, and one which might do his bidding either in punishing enemies or protecting friends, or both. He could exclude from the jury all friends of any particular person, and empanel a jury of his adversaries. And when we venture into the realm of business rivalry, political entanglements and religious controversies, there is no limit to which our imaginations would carry us respecting the injustice and wrongs that may be wrought by an unscrupulous judge in following the method employed by the trial judge in selecting and empaneling the jury in the present instance. It is not what has been done in following this method, but what may be done thereunder, that renders it dangerous and obnoxious to our sense of justice.

I am satisfied that the remedy of prohibition will not reach the dangerous method followed in this instance, and therefore

have concurred in the judgment. The question as to what remedy is applicable is not before us. It may be that the law is such that no relief may be had under any of the remedial provisions of our statutes. If such is the case the situation is much more serious and calls for earnest thought and grave concern on the part of those who are concerned in the administration of justice. Our opinion expressly refrains from approving the methods and practices of the trial judge, and impliedly condemns the same as irregular and improper.

SEAWELL, J., Concurring.—I concur in the conclusion reached by the main opinion. I am also in accord with the positive and enlarged views expressed by Mr. Justice Curtis as to the dangers that may obtain in the organization of grand juries, if the method adopted in the instant matter should grow into a precedent.

Rehearing denied in **L. A. 14976.**