[No. B168276. Second Dist., Div. Eight. Aug. 24, 2004.]

THE PEOPLE, Plaintiff and Appellant, v.
JEAN THORBOURN, Defendant and Respondent.

**COUNSEL**

Steve Cooley, District Attorney, Patrick D. Moran and Matthew G. Monforton, Deputy District Attorneys, for Plaintiff and Appellant.

Geragos & Geragos, Mark J. Geragos, Gregory R. Ellis and Shepard S. Kopp for Defendant and Respondent.

**OPINION**

**RUBIN, J.**—The People of the State of California appeal from an order under Penal Code section 1385 dismissing a grand jury indictment of defendant and respondent Jean Thorbourn on numerous counts of forgery, embezzlement, and tax fraud. For the reasons set forth below, we reverse the order and remand with directions to resubmit the matter to the grand jury. (Pen. Code, § 1009.)[1]

---

[1] This is the second time we have considered this matter. The initial portion of our statement of facts is derived in part from the unpublished opinion in our first decision (*People v. Thorbourn*, Mar. 6, 2003, B154753).

## FACTS AND PROCEDURAL HISTORY

Jean Thorbourn once worked as a bookkeeper at Hebrew Union College (HUC). In December 2000, the Los Angeles County Grand Jury indicted Thorbourn on 18 counts based on allegations that she embezzled more than $1 million from HUC between September 1991 and February 1997.[2] Testifying against Thorbourn at the grand jury hearing were two rabbis who supervised Thorbourn when they were serving as HUC's deans during 1989 to 1997. Before the grand jury, one of those rabbis identified various HUC checks bearing his ink-stamped signature which he contended had not been authorized by him.

The statute of limitations for grand theft and forgery is four years, but that period does not begin to run until the crimes are discovered. (§§ 801.5, 803, subd. (c)(1).) In April 2001 Thorbourn moved to dismiss the indictment, contending that its allegations, along with the evidence presented to the grand jury, were insufficient to show that HUC did not discover the crimes within four years before the indictment was issued. (§ 995.) In August 2001 she filed a supplemental brief contending that the prosecution failed to tell the grand jury that two HUC officials knew about her activities as of June 28, 1992. (§ 939.71, subd. (a) [trial court shall dismiss indictment if prosecution knowingly withheld exculpatory evidence, resulting in substantial prejudice to the defendant].) Thorbourn asserted that another HUC employee warned those higher-ups about Thorbourn's conduct. Instead of taking action against Thorbourn, however, HUC fired the whistleblower.[3]

The prosecution opposed the motion, contending that it had not learned of the whistleblower and her claims until she phoned the prosecutor on May 21, 2001, after the indictment had been returned. The prosecution proposed to strike from the indictment any alleged forgeries occurring before February 28, 1996, a date that was four years after the whistleblower informed HUC of Thorbourn's activities.[4] If allowed to do so, nearly 300 alleged forgeries totaling more than $550,000 would be eliminated. Because the grand theft

---

[2] Counts 1–13 were based on the alleged forgery of hundreds of checks totaling more than $1.2 million. (Pen. Code, § 470.) Count 14 alleged grand theft. (Pen. Code, § 487.) Counts 15–18 alleged that Thorbourn filed false tax returns for the years 1995 through 1998. (Rev. & Tax. Code, § 19705.) All further section references are to the Penal Code.

[3] The evidentiary support for this contention came from the whistleblower's application for unemployment insurance benefits, where her stated reason for leaving her job was: "The person misuseing [sic] company funds had the Dean + V.P. up against the wall—I got terminated for being honest."

[4] The discrepancy between the supposed June 1992 report to HUC about Thorbourn's conduct and the prosecution's proposal to eliminate any alleged forgeries occurring before February 28, 1996, is not apparent from the record and has not been explained by the parties. The true date, whatever it might be, is irrelevant to our decision.

charge was based on a continuing offense that lasted until May 1997, however, the prosecution contended that charge was not barred by the statute of limitations. (*People v. Bailey* (1961) 55 Cal.2d 514, 518–520 [11 Cal.Rptr. 543, 360 P.2d 39].) The tax fraud counts were also unaffected by the statute of limitations, the prosecution contended.

The court denied the motion to dismiss on September 5, 2001, but agreed to reconsider the matter on September 18, 2001. Following extensive argument by the parties, the court decided to dismiss the indictment pursuant to section 1385 in the interests of justice. Even though the court did not believe the prosecution knowingly withheld exculpatory evidence from the grand jury, it felt that obtaining a new indictment in light of that evidence would clean up a "tainted" indictment and save the prosecution from proceeding on counts it knew were time-barred.

Under section 1385, the trial court must state the reasons for an order of dismissal in its minutes. The trial court's minute order said the indictment was dismissed under section 1385 because the prosecution "failed to present Brady information to the grand jury," an apparent reference to *Brady v. Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 83 S.Ct. 1194], which held that the prosecution must disclose all known exculpatory evidence to a defendant before trial. The People appealed and we reversed, holding that the trial court's concomitant finding that the prosecutor had not learned of the potentially exculpatory evidence until after the indictment was returned left the minute order internally inconsistent and, therefore, insufficient to satisfy the trial court's obligation to provide a meaningful statement of reasons. (§ 1385, subd. (a); *People v. Orin* (1975) 13 Cal.3d 937, 944–945 [120 Cal.Rptr. 65, 533 P.2d 193] (*Orin*).)[5]

On remand, the trial court dismissed the entire indictment again. After finding that the exculpatory evidence was material, credible, and would "reasonably have impacted" the grand jury's consideration of the prosecution's witnesses, the trial court found that the prosecution's failure to advise the grand jury of that evidence after it became known violated Thorbourn's "constitutional right to due process."

---

[5] The People contend that the trial court once more failed to satisfy its statutory obligations because its statement of reasons was in a separate written order and was not made part of any minute order. We disagree. The written order complied because it fully stated the court's reasons for dismissing the case, allowing us to properly review the order. (*People v. Brunner* (1973) 32 Cal.App.3d 908, 911–912 [108 Cal.Rptr. 501].)

## DISCUSSION

### 1. *Standard of Review*

██ A trial court may, upon its own motion or that of the prosecution, dismiss an action in furtherance of justice. (§ 1385, subd. (a).) When determining whether a dismissal will further the interests of justice, the court must consider both the constitutional rights of the defendant and the interests of society, as represented by the prosecution. (*Orin, supra,* 13 Cal.3d at p. 945.) The trial court's minute order granting a section 1385 motion must contain a written specification of reasons that sets out the factual basis for the trial court's conclusions. (*People v. Superior Court (Flores)* (1989) 214 Cal.App.3d 127, 136 [262 Cal.Rptr. 576].) The main purpose of this requirement is to restrain judicial discretion and curb arbitrary action for undisclosed motives and reasons. The written specification allows us to determine whether the trial court's stated reasons justified its exercise of discretion. As a result, our review is limited to the reasons stated by the trial court. (*People v. Bracey* (1994) 21 Cal.App.4th 1532, 1541–1542 [26 Cal.Rptr.2d 730].)

### 2. *Due Process Violation*

The trial court found that the whistleblower evidence must have been reliable because the prosecution was willing to amend the indictment and strike allegations that occurred before February 1996. That evidence, the court concluded, would have affected the jury's evaluation of the HUC witnesses' credibility and "raised significant questions as to whether HUC authorized the alleged misappropriations . . . ." Although the court found that the prosecution did not know about the evidence before obtaining the indictment, the court ruled that the prosecution's failure to take the evidence back to the grand jury violated Thorbourn's constitutional due process rights.[6]

██ The trial court's ruling did not specify whether it relied on either the United States or California Constitutions and did not cite any supporting

---

[6] On this record, it seems unclear to us just how exculpatory the whistleblower's evidence might be. The only evidence is an unemployment compensation form, where the former HUC employee states she was fired for disclosing a possible misuse of funds. The parties advance two possible interpretations of this evidence: (1) that the HUC officials effectively authorized Thorbourn's use of the money; or (2) that the HUC officials were also involved in her crimes. We understand that the authorization evidence might well affect the time of discovery for statute of limitations purposes. We also agree that the evidence might have had some effect on the grand jury's determination of the HUC witnesses' credibility. We are not, however, necessarily convinced that the dual interpretations of that evidence create a viable defense to the theft charges. Although the open and good faith appropriation of an employer's property under a claim of right provides a defense to an embezzlement charge (§ 511), Thorbourn has never contended that she had such a good faith claim to the money she allegedly took.

authority. Under the United States Constitution, however, a prosecutor has no duty to present exculpatory evidence to a grand jury. (*United States v. Williams* (1992) 504 U.S. 36, 53 [118 L.Ed.2d 352, 112 S.Ct. 1735].) The California courts have avoided deciding the issue on constitutional grounds. Under long-standing California statutory law, the grand jury does not have to hear exculpatory evidence, but if it has reason to believe such evidence exists, may order the prosecutor to produce it. (§ 939.7.) Relying on the rules of statutory interpretation, the court in *Johnson v. Superior Court* (1975) 15 Cal.3d 248 [124 Cal.Rptr. 32, 539 P.2d 792], construed section 939.7 to place an implied obligation on the prosecutor to disclose any known exculpatory evidence to the grand jury. The *Johnson* ruling was later codified by the Legislature as section 939.71. (§ 939.71, subds. (a), (b).)

■ Later cases have held that a grand jury indictee's due process rights might be violated if the grand jury proceedings are conducted in such a way as to compromise the grand jury's ability to act independently and impartially. (*People v. Superior Court (Mouchaourab)* (2000) 78 Cal.App.4th 403, 435 [92 Cal.Rptr.2d 829], relying on *Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018 [13 Cal.Rptr.2d 551, 839 P.2d 1059] [presentation of irrelevant and incompetent evidence might violate due process, but was found harmless in that case]; *People v. Backus* (1979) 23 Cal.3d 360 [152 Cal.Rptr. 710, 590 P.2d 837] [improper instructions given to grand jury].)

■ The trial court did not find, and Thorbourn does not contend, that the prosecution's failure to take the newly discovered whistleblower evidence back to the grand jury somehow affected the grand jury's ability to act independently or impartially. In fact, Thorbourn does not contend that her due process rights were violated at all.[7] Instead, her appellate brief argues that the issue before us is not whether a due process violation occurred, but whether under the particular facts of this case, the trial court abused its section 1385 discretion. As discussed above, our review is limited to the reasons stated by the trial court. (*People v. Bracey, supra,* 21 Cal.App.4th at pp. 1541–1542.) Because Thorbourn has neither discussed nor cited authority concerning the existence or nature of the supposed due process right which motivated the trial court's ruling, we deem this an implicit concession that no such right exists and a waiver of the issue. (*People v. Beltran* (2000) 82 Cal.App.4th 693, 697, fn. 5 [98 Cal.Rptr.2d 730].)

---

[7] As far as we can tell, no court has suggested that either the statutory law governing grand jury proceedings or the California Constitution requires a prosecutor who has obtained an indictment to return to the grand jury for a new hearing if he later discovers potentially exculpatory evidence. We take no position on that issue, however.

### 3. *Even If a Due Process Violation Occurred, Dismissal Was Still Improper*

Alternatively, even if Thorbourn's due process rights were violated, we believe an outright dismissal of the indictment was not warranted. First, the tax fraud charges were in no way affected by the whistleblower evidence, an issue not addressed by the trial court. Second, even if the trial court correctly believed the prosecution could not amend the indictment to strike the time-barred embezzlement allegations, it then had the option of ordering the case resubmitted to the grand jury. (§ 1009.) In short, the trial court could have achieved its desired remedy—another grand jury hearing with presentation of the whistleblower evidence—without dismissing the action under section 1385. Instead, the court dismissed the entire action pursuant to section 1385, meaning that with but few exceptions, another dismissal of the case would exhaust the prosecution's two-filing limit and bar further prosecution of Thorbourn. (§ 1387; *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 738–739 [124 Cal.Rptr.2d 591].)

■ Dismissals under section 1385 are disfavored where less drastic remedies exist. (*People v. Peinado* (1976) 67 Cal.App.3dSupp. 1, 11 [136 Cal.Rptr. 845], citing *People v. Davis* (1971) 20 Cal.App.3d 890, 898 [98 Cal.Rptr. 71] [reversing section 1385 dismissal where a lesser sanction would have been effective].) As the People note, two such remedies are available here: (1) permitting the prosecution to amend the indictment by eliminating the time-barred embezzlement charges; or (2) resubmitting the matter to the grand jury. (§ 1009.) We believe the prosecution's proposed amendment would have been proper because it would have done no more than eliminate some of the charges. (*People v. De Georgio* (1960) 185 Cal.App.2d 413, 421 [8 Cal.Rptr. 295].) Because that is not an issue we should decide in the first instance, in the ordinary case we would remand the matter to the trial court to determine for itself whether to allow the amendment or resubmit the matter to the grand jury. This is not the ordinary case, however. Nearly four years have passed since Thorbourn was indicted. As respondent acknowledged during oral argument, the interests of judicial economy point us in the direction of a speedier resolution—remanding the matter to the trial court with directions to resubmit the matter to the grand jury. Doing so will not only avoid further motions in the trial court and the possibility of yet another appeal, it will also address the trial court's concerns about an indictment by a grand jury that did not consider the whistleblower's evidence. Accordingly, that is the course we shall follow.

## DISPOSITION

For the reasons set forth above, the order dismissing the grand jury indictment is reversed and remanded to the trial court with directions to resubmit the matter to the grand jury.

Cooper, P. J., and Boland, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 1, 2004.