Filed 10/17/17 (unmodified opinion attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DARREN WILLIAMS, | C083126 |
| Petitioner, | (Super. Ct. No. STKCRFE20160006123) |
| v. | |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, | ORDER MODIFYING OPINION |
| Respondent; | [NO CHANGE IN JUDGMENT] |
| THE PEOPLE, | |
| Real Party in Interest. | |

THE COURT:

It is ordered that the published opinion filed herein on September 29, 2017, be modified as follows:

1.      At page 14, delete the final sentence in the disposition, which reads "The stay order is vacated[,]" and replace it with the following:  "This court's stay order is vacated upon finality of this opinion."

1

There is no change in the judgment.

BY THE COURT:

/S/

_____
BUTZ, Acting P.J.

/S/

_____
DUARTE, J.

/S/

_____
RENNER, J.

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DARREN WILLIAMS,<br><br>        Petitioner,<br><br>   v.<br><br>THE SUPERIOR COURT OF SAN JOAQUIN COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | C083126<br><br>(Super. Ct. No. STKCRFE20160006123) |

ORIGINAL PROCEEDING in mandate. Petition granted. Stephen G. Demetras, Judge.

Miriam T. Lyell, Public Defender, Robert G. Remlinger, Nelson C. Lu and Jonathan W. Fattarsi, Deputy Public Defenders for Petitioner.

No Appearance for Respondent.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Paul E. O'Connor, Deputy Attorneys General for Real Party in Interest.

1

Petitioner Darren Williams seeks extraordinary writ relief from the superior court's order denying his Penal Code section 995[1] motion to dismiss an indictment issued by a grand jury charging him with a series of cell phone store robberies. Petitioner moved to dismiss the indictment on the basis that the deputy district attorney's excusal of a juror for hardship violated the grand jury's independence and rendered it improperly constituted. The California Supreme Court is currently considering the related question of whether a prosecutor's improper dismissal of a grand juror denied a defendant a "substantial right" in *Avitia v. Superior Court* (Apr. 18, 2017, C082859) [nonpub. opn.], review granted June 21, 2017, S242030.[2] Pending further guidance from the Supreme Court, we resolve the matter before us. Petitioner also challenges the sufficiency of the evidence with respect to the gang allegations and counts regarding a March 10, 2014, robbery. We need not reach these sufficiency of the evidence claims because we conclude the superior court should have granted the motion to dismiss the indictment. The deputy district attorney's exercise of authority he did not have over the grand jury, in front of the grand jurors, was not harmless. It was a fundamental misunderstanding of the prosecutor's role that damaged the structure of the grand jury process and the independence of the grand jury itself. We will issue a peremptory writ of mandate vacating the superior court's order denying petitioner's motion to dismiss the indictment and directing the court to enter a new order granting the motion.

## I. BACKGROUND

### A. Grand Jury Proceedings

On August 6, 2015, the San Joaquin County District Attorney's Office filed a complaint charging petitioner and codefendants Jordan Ferguson and William Mayfield

---

[1] Undesignated statutory references are to the Penal Code.

[2] Neither party to these proceedings raised a "substantial right" argument. (*People v. Standish* (2006) 38 Cal.4th 858, 882.)

2

with multiple counts of robbery and other charges.  The People filed an amended complaint on April 15, 2016, that included 26 charges and additional factual allegations. Petitioner in particular was charged with 15 counts of robbery, two counts of attempted robbery, one count of conspiracy to commit a crime, one count of kidnapping to commit robbery, and one count of possession of an assault weapon.

The transcript of the grand jury proceedings provided by petitioner begins on April 25, 2016, with the deputy district attorney introducing himself to the jurors.  Next, the deputy district attorney excused Juror No. 15 from service:  "Before I get any further, I have been informed that one of our potential jurors who was designated as Juror Number 15 learned over the break that she will not get paid for the full five days and that she has informed us that that will cause her an economic hardship as stated in the statute.  [¶]  *So I'm going to release her from her service at this time*.  [¶]  And that was—and just for the record, Juror Number 15; is that correct?

"THE JURORS:  Yes.

"[Deputy District Attorney]:  Thank you.  [¶]  You can leave your materials there and I will pick them up again."  (Italics added.)

The proceedings continued with 18 jurors, and witness testimony began the following day.  At the beginning of the second day of testimony, the deputy district attorney made the following record:

"Grand Juror Number 10 approached me yesterday at the conclusion of testimony for the day and let me know that one of the witnesses she recognized.  She did not recognize that person when we read the witness list.  They're not a close relationship of any real kind, and she assured me that that relationship wouldn't affect her ability to be impartial and impartially judge the facts of this case and deliberate.

"Is that correct?

"JUROR NO. 10:  Yes.

"[Deputy District Attorney]:  Thank you."

3

After that, testimony continued. The last witness testified and jury instructions were read on April 29, 2016. The prosecutor finished reading the jury instructions sometime after 1:30 p.m. and then gave a closing argument. The grand jury deliberated and returned a 68-page indictment later that same day. At least 12 of the grand jurors concurred in the finding of the indictment. With respect to petitioner, the indictment included all the offenses and allegations that appeared in the amended complaint.

B.      *Motion to Dismiss the Indictment*

On July 15, 2016, petitioner filed a motion to dismiss the indictment against him under section 995. He argued that, by dismissing a previously qualified grand juror for hardship, the prosecutor exceeded his authority, "usurped a judicial branch function," and "invaded the independent role of the grand jury." This, he argues, left an improperly constituted jury of less than the required 19 grand jurors and rendered the indictment fatally defective. Petitioner argued these allegations were "compounded by other actions of the Deputy District Attorney" but did not specify any. Additionally, petitioner raised challenges to the sufficiency of the evidence with regard to the gang allegations and his involvement in the March 10, 2014, robbery.

The People's opposition attached as an exhibit a ruling by the Honorable Brett H. Morgan denying a motion to dismiss an indictment in an unrelated grand jury proceeding in which a different San Joaquin County deputy district attorney exceeded his authority by excusing a biased juror outside the presence of the other jurors.[3] As discussed below, this action violated sections 910 and 939.5.

Borrowing from this earlier ruling, the court denied petitioner's motion. With respect to the excusal of Juror No. 15, the court explained, "[E]verybody agrees [the deputy district attorney] kicked off a juror improperly, although, [the juror] probably

---

[3] This is the case that is currently pending before the Supreme Court (*Avitia v. Superior Court, supra,* C082859).

4

would have been excused by a judicial officer in some fashion. But it's not clear what the remedy is here. Judge Morgan felt, I think, his cases that he cites are correct, that there is no automatic prejudice by having 18 versus 19 when you have the declaration that 12 or more returned the indictment. That's what you are entitled to. So what's the best that could have happened here? This 19th juror could have voted against a voting order or the indictment. Still would have had 12 or more.

"So with that state, I don't think there is any automatic prejudice, and I don't see that the defendant has shown any actual prejudice here. Twelve or more grand jurors voted for the indictment and that's all that's required.

"So while there was a technical violation of that statute, I don't think it rises to a due process violation and its displayed prejudice here on behalf of any of the defendants. So I would overrule the 995 on those grounds."

Petitioner sought review in this court by filing a petition for writ of mandate or prohibition. We requested that the People file an opposition, and they did.

On December 1, 2016, we issued an order to show cause why the relief prayed for in this proceeding should not be granted and issued a stay of all further proceedings, including the trial. The People subsequently indicated their earlier opposition to the petition may be deemed their return.

## II. DISCUSSION

### A.     *The Grand Jury Process*

In the prosecution of a felony, the People may proceed either by indictment or information. (Cal. Const., art. I, § 14; §§ 682, 737.) "An indictment is an accusation in writing, presented by the grand jury to a competent court, charging a person with a public offense." (§ 889.) "Thus, under the statutory scheme, it is the grand jury's function to determine whether probable cause exists to accuse a defendant of a particular crime." (*Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1026.) "Prior to the authorization of informations, the chief function of the grand jury was to hear evidence of felonies and

5

to bring indictments." (4 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Introduction to Criminal Procedure, § 33, p. 58.) While this is no longer so (*ibid*.), in determining whether probable cause exists to accuse a defendant of a particular crime, "[t]he grand jury's 'historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor' [citation] is as well-established in California as it is in the federal system." (*Johnson v. Superior Court of San Joaquin County* (1975) 15 Cal.3d 248, 253-254.) A grand jury is " ' "a constitutional fixture in its own right." ' [Citations.] In fact the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people. [Citations.] Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length." (*United States v. Williams* (1992) 504 U.S. 36, 47 [118 L.Ed. 2d 352].)

The grand jury originates from the common law, but "the California Legislature has codified extensive rules defining it and governing its formation and proceedings, including provisions for implementing the long-established tradition of grand jury secrecy." (*Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1122.) For instance, "[d]eliberations of the grand jury are completely private; no person other than the grand jurors themselves may be present during 'the expression of the opinions of the grand jurors, or the giving of their votes' on any criminal matter before them. (§ 939.)" (*People v. Superior Court* (*Mouchaourab*) (2000) 78 Cal.App.4th 403, 415.) "A grand jury is a body of the required number of persons returned from the citizens of the county before a court of competent jurisdiction, and sworn to inquire of public offenses committed or triable within the county." (§ 888.) At least one grand jury is impaneled in

6

each county every year.[4]  (§ 905; *Cummiskey v. Superior Court, supra*, 3 Cal.4th at p. 1024.)  It is undisputed that the "required number" of jurors in San Joaquin County is 19.  (§ 888.2, subd. (c).)  Of these, at least 12 must concur in an indictment.  (§ 940.)  "When so found it shall be endorsed, 'A true bill.' "  (*Ibid*.)

"The qualifications for service as a grand juror in California are prescribed by statute and relate to matters such as citizenship, age, mental competency, intelligence, and character.  [Citation.]  The trial court determines these qualifications by personal interview and examination."  (*Packer v. Superior Court* (2011) 201 Cal.App.4th 152, 163, fn. omitted (*Packer*).)  Of particular relevance to this petition, "When a person is drawn and found qualified he shall be accepted unless the court, on the application of the juror and before he is sworn, excuses him from such service for any of the reasons prescribed in this title or in Chapter 1 (commencing with Section 190), Title 3, Part 1 of the Code of Civil Procedure."  (§ 909.)  Included in this chapter is an excusal for "undue hardship."  (Code Civ. Proc, § 204, subd. (b).)  The court also appoints the foreman of the grand jury (§ 912), and the foreman is charged with directing a juror who is biased to retire (§ 939.5).

The district attorney may appear before the grand jury to give "information or advice" (§ 935), but he or she has no role in excusing jurors:  "No challenge shall be made or allowed to the panel from which the grand jury is drawn, nor to an individual grand juror, except when made by the court for want of qualification, as prescribed in Section 909."  (§ 910.)

---

[4]  It appears this case involves the impanelment of an "additional grand jury" under section 904.6 specifically impaneled to hear criminal matters.

7

The Penal Code also provides a mechanism, not utilized here, by which vacancies on the grand jury may be filled by the jury commissioner in the presence of the court. (§ 908.1.)[5]

B.      *Grand Juror No. 10*

In this original proceeding, petitioner claims broadly that the deputy district attorney violated the grand jury's independence and rendered it improperly constituted by *choosing* who to excuse. Specifically, petitioner's expanded claim now encompasses the assertion that the deputy district attorney "elected not to remove Grand Juror [No.] 10." The People argue this issue was forfeited because petitioner did not raise it earlier. They rely on *Packer*, in which the defendant argued his indictment should have been dismissed because of grand juror bias (*Packer*, *supra*, 201 Cal.App.4th at pp. 156-157) and also, for the first time in the court of appeal, "that the prosecutor 'may have violated the separation of powers' by deciding that Juror No. 2 was unbiased instead of allowing the court to do so" (*id.* at p. 171). The appellate court held that it did not need to address the separation of powers claim because it was not raised in the superior court. (*Ibid.*) Petitioner argues that here the issue regarding Juror No. 10 was not forfeited because it was part of his claim in his motion to dismiss, and also because it is a constitutional claim. On the question of forfeiture, the People have the better argument. *Packer* also involved a constitutional claim, and here the petitioner's claim in the superior court was limited to the *excusal* of Juror No. 15. Even if we were to reach this issue, the allegations regarding Juror No. 10 do not add meaningfully to petitioner's writ petition. While the deputy district attorney discussed the possible bias of Juror No. 10, he did not dismiss her. While we are troubled by the implication he had authority over this issue, his actions did not technically go beyond making a record of the facts relevant to whether the foreman

---

[5]  Where evidence has already been taken, a new grand juror may not vote. (§ 908.1.)

8

had a duty to direct Juror No. 10 to retire.  (§ 939.5.)  We will therefore decide this petition based solely on the deputy district attorney's erroneous excusal of Juror No. 15.

*C.*      *Prosecutor's Excusal of Juror No. 15*

Properly narrowed, petitioner's claim is that the deputy district attorney's excusal of Juror No. 15 violated the grand jury's independence and rendered it improperly constituted.  The People attempt to recast this claim as an allegation of bias on the part of a grand juror.  This merely distracts from the fact that the actual question presented— whether a district attorney's improper granting of a hardship request is grounds for dismissing an indictment—is apparently one of first impression in California.

Section 995, subdivision (a)(1) sets forth two categories of error that can provide a basis for granting a motion to set aside an indictment:

"(A) Where it is not found, endorsed, and presented as prescribed in [the Penal] code.

"(B) That the defendant has been indicted without reasonable or probable cause."

Our Supreme Court has explained that the former ground "has been interpreted as applying only to those sections in part 2, title 5, chapter 1, of the Penal Code beginning with section 940." (*People v. Jefferson* (1956) 47 Cal.2d 438, 442; accord *Stark v. Superior Court* (2011) 52 Cal.4th 368, 416, fn. 24 (*Stark*).)  This construction excludes the deputy district attorney's violation in this case of sections 909 and 910 as a basis for setting aside an indictment under section 995, subdivision (a)(1)(A).  But the categories of error described in subdivision (a)(1)(A) and (B) of section 995 are not the only reasons courts may set aside an indictment.  As relevant here, our Supreme Court has affirmed that, regardless of the precise procedural vehicle (*Stark, supra*, at p. 417, fn. 25), "the manner in which the grand jury proceedings are conducted may result in a denial of a defendant's due process rights, requiring dismissal of the indictment." (*Id.* at p. 417.) Petitioner relies primarily on two lines of authority that specifically require dismissal when (1) a grand jury is not legally constituted or (2) there is a failure to disclose

9

exculpatory evidence that results in an interference with the grand jury's independence and therefore causes substantial prejudice to the defendant. The former line of authority makes no reference to section 995, while the later line of authority to dismiss is specifically authorized by section 939.71.[6] Petitioner uses these lines of authority to argue that dismissal of his indictment is required because the jury was improperly constituted and the grand jury's independence was violated. We discuss each claim below.

### 1. The Indictment Was Not Void

The concept that an indictment found by a jury " 'not legally constituted' " is void is rooted in *Bruner v. Superior Court* (1891) 92 Cal. 239, 249 (*Bruner*). In *Bruner*, the superior court improperly appointed a private citizen to summon grand jurors instead of the sheriff. (*Id.* at pp. 241-242, 251.) The court held the grand jury was therefore not a legal one, and the indictment it returned was void for lack of jurisdiction. (*Id*. at pp. 251-252, 256.) A distinction, however, between the jurisdictional defect present in *Bruner* and errors that do not undermine jurisdiction was underscored in *Fitts v. Superior Court of Los Angeles County* (1935) 4 Cal.2d 514 (*Fitts*). In *Fitts*, indictments were claimed to be void because, among other things, the grand jury list was not prepared in substantial compliance with the law and the judges' biases denied the defendants equal protection of the laws and due process of law. (*Id*. at pp. 517-518.) Our Supreme Court rejected the argument that these claims undermined the grand jury's jurisdiction or nullified the indictment: "We are not to be understood as condoning or approving the above

---

[6] "If the prosecutor is aware of exculpatory evidence, the prosecutor shall inform the grand jury of its nature and existence. Once the prosecutor has informed the grand jury of exculpatory evidence pursuant to this section, the prosecutor shall inform the grand jury of its duties under Section 939.7. If a failure to comply with the provisions of this section results in substantial prejudice, it shall be grounds for dismissal of the portion of the indictment related to that evidence." (§ 939.71, subd. (a).)

10

enumerated methods and practices alleged to have been resorted to in the impanelment of the grand jury. It is our view that such practices . . . would not affect the jurisdiction of the respondent court to try the petitioners thereon." (*Id*. at p. 520.) "Mere irregularities, as distinguished from jurisdictional defects, occurring in the formation of a grand jury will not justify a court declaring an indictment a nullity. [Citation.] The true distinction lies between the acts of a body having no semblance of authority to act, and of a body which, though not strictly regular in its organization, is, nevertheless, acting under a color of authority." (*Id*. at p. 521.) Similarly, in this case, the prosecutor's improper excusal of a juror who claimed hardship did not mean the remainder of the grand jury was acting without the color of authority.

Petitioner also argues that the failure to maintain the minimum number of jurors required by section 888.2 requires dismissal of the indictment. However, it is well-settled that an indictment cannot be set aside simply because the grand jury fell below the required total number of grand jurors if the minimum number who must vote to indict did so. (*People v. Hunter* (1879) 54 Cal. 65, 65-67 (*Hunter*).) Petitioner attempts to distinguish *Hunter* by suggesting that its holding should be limited to when a grand jury falls below the minimum number of jurors *after* the presentation of evidence has commenced. *Hunter* contains no such limitation. Moreover, our Supreme Court has applied *Hunter* in a case where the argument was that the grand jury was below the minimum number of jurors from the outset due to the alleged incompetency of one of the jurors. (*People v. Simmons* (1897) 119 Cal. 1, 3-4.) In this case, the grand jury remained a legal body and the indictment it returned was not void merely because the prosecutor excused one of the jurors for hardship. Nonetheless, as we discuss next, the indictment was still subject to dismissal based on this error.

2.      *Grand Jury Independence*

Petitioner argues the prosecutor's interference with the grand jury's independence requires dismissal. In so doing, he relies on a case in which an appellate court dismissed

11

an indictment under section 939.71 for failure to disclose exculpatory evidence where the prosecutor erroneously informed the grand jury that a witness was not being called because his potential testimony was irrelevant. (*McGill v. Superior Court* (2011) 195 Cal.App.4th 1454, 1464, 1499, 1503-1504 (*McGill*).) In reaching the conclusion there was substantial prejudice, the appellate court held that the prosecutor's actions " 'seriously interfered with the grand jury's investigatory function, undermining its independence.' " (*Id.* at p. 1504, quoting *Berardi v. Superior Court* (2007) 149 Cal.App.4th 476, 481.) Section 939.71 does not apply to petitioner's claims because there is no allegation of failure to disclose exculpatory evidence. But *McGill* also discussed the broader line of authority recognizing "the 'manner' by which a grand jury investigation is conducted may also invalidate a grand jury's indictment." (*McGill, supra,* at p. 1508; accord *Stark, supra,* 52 Cal.4th at p. 417.) Specifically, "due process rights might be violated if the grand jury proceedings are conducted in such a way as to compromise the grand jury's ability to act independently and impartially." (*People v. Thorbourn* (2004) 121 Cal.App.4th 1083, 1089.)[7] Courts have explained that, "the determination whether a defendant's due process rights have been violated in this regard ultimately depends on whether the error at issue 'substantially impaired the independence and impartiality of the grand jury.' " (*Packer*, *supra*, 201 Cal.App.4th at p. 167.) We conclude the facts in this case reveal a substantial impairment.

By deciding that Juror No. 15 should be excused for hardship, the deputy district attorney used authority of the judicial branch. It is unclear from the limited record before

---

[7] Some courts have characterized such a challenge as being made under section 995, subdivision (a)(1)(B) "to the probable cause determination underlying the indictment, based on the nature and extent of the evidence and the manner in which the proceedings were conducted by the district attorney." (*People v. Superior Court* (*Mouchaourab*), *supra,* 78 Cal.App.4th at pp. 424-425; accord *Dustin v. Superior Court* (2002) 99 Cal.App.4th 1311, 1320.) As discussed above, we need not decide if this is an accurate understanding of the law.

us whether the superior court would have agreed that Juror No. 15 should have been excused for "undue hardship." (See Code Civ. Proc., § 204, subd. (b).) We will never know because the court never decided the issue. The fact that the excused juror was not replaced suggests the court was not made aware of what happened, effectively preventing the drawing of another grand juror who might have impacted deliberations.

The prosecutor's actions supplanted the court's role in the proceedings and, because the excusal colloquy took place in front of the other jurors, allowed the remaining jurors to mistakenly believe the prosecutor had legal authority to approve a hardship request. Thus, the deputy district attorney expanded his power over the grand jury proceedings and the grand jurors themselves. Instead of merely providing information or advice (§ 935), he asserted actual control over them. If this case involved a petit jury instead of a grand jury, we are confident these same facts would produce justifiable outrage by the court and opposing counsel. But here, the possibility of an objection was structurally foreclosed: The court was not present and grand jury proceedings necessarily exclude defense counsel. In denying petitioner's motion to dismiss the indictment, the superior court focused its analysis on the missing 19th juror, but our concern is with the impact the deputy district attorney's actions had on the grand jurors that remained. "[I]rregularities at grand jury proceedings should be closely scrutinized because protection of the defendant's rights is entirely under the control of the prosecution without participation by the defense." (*Berardi v. Superior Court, supra,* 149 Cal.App.4th at pp. 495-496.) The deputy district attorney's improper use of judicial authority went to the very structure the Legislature has provided to keep these constitutional fixtures necessarily independent. (Cf. *De Leon v. Hartley* (N.M. 2013) 2014-NMSC 005 [316 P.3d 896, 899] [holding that permitting district attorney to take over the court's role of deciding who shall serve as grand jurors "is to sacrifice any perception that the grand jury is an entity distinct from the prosecutor that is capable of serving as a barrier against unwarranted accusations"].) We must, therefore, conclude

13

that the deputy district attorney's improper excusal of Juror No. 15 and corresponding reduction of the required number of jurors substantially impaired the jury's independence and impartiality, and may have contributed to its determination that probable cause existed to accuse petitioner of the charged crimes. For these reasons, petitioner's motion to dismiss the indictment against him based on the improper excusal of Juror No. 15 should have been granted.

## III. DISPOSITION

Let a peremptory writ of mandate issue vacating respondent court's order denying petitioner's motion to dismiss the indictment and directing the superior court to enter a new order granting the motion as to the charges and allegations against petitioner. The writ shall issue without prejudice to the People continuing to prosecute these charges by seeking another indictment free of the charged defects or by filing another complaint. The stay order is vacated.

/S/

_____
RENNER, J.

We concur:

/S/

_____
BUTZ, Acting P.J.

/S/

_____
DUARTE, J.

14