Filed 7/24/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JONATHAN JACKSON,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>      Respondent;<br><br>THE PEOPLE,<br><br>      Real Party in Interest. | A153818<br><br>(Contra Costa County<br>Super. Ct. No. 5-170598-7) |

Petitioner Jonathan Jackson seeks extraordinary writ relief from the superior court's order denying his motion to dismiss an indictment issued by a grand jury charging him with special circumstances murder, kidnapping, and rape. Petitioner moved to dismiss the indictment pursuant to Penal Code section 995[1] and on nonstatutory grounds. The motion was brought on the grounds, among others, that the deputy district attorney's excusal of a juror for cause, in the presence of the remaining grand jurors, substantially impaired the independence and impartiality of the grand jury, deprived petitioner of a substantial right, and thereby violated his right to due process. The California Supreme Court is currently considering whether a prosecutor's improper dismissal of a grand juror denied a defendant a "substantial right" in *Avitia v. Superior Court* (Apr. 18, 2017, C082859) [nonpub. opn.], review granted June 21, 2017, S242030. That court has also granted review of a subsequent decision by the Third District Court of Appeal that presents issues similar to those presented here. (*Williams v. Superior Court* (2017)

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

1

15 Cal.App.5th 1049, review granted Dec. 13, 2017, S245314 (*Williams*).) We conclude that while the prosecutor's dismissal of the grand juror was improper and violated section 939.5, it did not rise to the level of a violation of petitioner's due process rights, nor did it deprive petitioner of a substantial right. Further, petitioner has not made a showing of prejudice sufficient to warrant dismissal of the indictment. Accordingly, we shall deny the petition.

## I. BACKGROUND

### A. Grand Jury Proceedings

On October 13, 2016, the Contra Costa County District Attorney's Office filed a complaint charging petitioner with one count of murder (§ 187, subd. (a)); one count of kidnapping to commit rape (§ 209, subd. (b)(1)); one count of kidnapping to commit sexual penetration by foreign object (§ 209, subd. (b)(1)); one count of forcible rape (§ 261, subd. (a)(2)); and one count of sexual penetration by a foreign object (§ 289, subd. (a)(1)(A)). With respect to the murder charge, petitioner was charged with felony murder special circumstances under two theories: rape and rape by instrument (§ 190.2, subd. (a)(17)). With respect to the kidnapping charges, petitioner was charged with great bodily injury enhancements for an elderly victim pursuant to section 12022.7, subdivision (c). With respect to the rape and penetration charges, petitioner was charged with an enhancement pursuant to section 667.61, subdivision (a) and (d), for kidnapping and inflicting great bodily injury.

On March 27, 2017, before a preliminary hearing could be conducted, a grand jury was convened to consider criminal charges against petitioner. At the outset of the proceedings, the deputy district attorney, Aron J. DeFerrari, introduced himself to the 19 grand jurors present and presented an overview of the role of the grand jury, including its investigative function and the district attorney's advisory role. The deputy district attorney then gave an opening statement summarizing the alleged crimes and the evidence he anticipated the grand jury would hear. He also supplied the grand jurors with a list of witnesses he anticipated calling. At his request, the grand jury forewoman then read the following statement based upon section 939.5: "The grand jury is about to

2

consider a request for an indictment brought by the District Attorney. I direct any member of the grand jury who has a state in mind in reference to the case to either party or any witness which will prevent him or her from acting impartially and without prejudice to the substantial rights of either party to retire." The deputy district attorney then asked whether any of the grand jurors knew the petitioner, the alleged victim, Sun Yi Kwon, or any of the listed witnesses. One grand juror responded affirmatively, and the following exchange ensued:

"A GRAND JUROR: Well, I really—I met Miss Jackson [sic] several times when she was at the donut shop, but I can't say I know her.

"MR. DeFERRARI: You met Miss Jackson or Miss Kwon?

"A GRAND JUROR: Kwon. Not Jackson, Kwon. The Oriental lady. She goes to the same place where I go to buy donuts, next to where she used to live. But I can't say that I know her. So I just want to bring it up.

"MR. DeFERRARI: And this was back, obviously, before 2012?

"A GRAND JUROR: Oh, yeah. Yeah. A couple days later, I was there and I heard. And that's why I said in the paper, everything came up. But just want to bring it up. I'm not trying to excuse myself.

"MR. DeFERRARI: No. Thank you. I appreciate you bringing it up. This is really important.

"Is your familiarity with Miss Kwon or the nature of the case itself, 'cause you're the same grand juror who brought up that this was in the newspapers, going to influence you such that you cannot be fair and impartial in your consideration of this evidence or your investigation of the case or both?

"A GRAND JUROR: Well, it's—I'd like to stay, but it's a tough decision when you know what the guy did.

"MR. DeFERRARI: Here is my—

"A GRAND JUROR: I'd like to hear it through.

"MR. DeFERRARI: Here's my thought: I want to make sure, again, that what we do here is transparent and has integrity and stands up to scrutiny. So out of an abundance

3

of caution, you seem like an honest guy, you seem like you can be fair and impartial, but out of an abundance of caution, I'm going to excuse you from grand jury service in this case. Okay?

"What I want you to do is return next Monday, right? I want you to come back on Monday to the exact same place.

"A GRAND JUROR: Here?

"MR. DeFERRARI: Right here, sir. And you're going to be able to hear the other cases presented to you. Okay. The other cases that have nothing to do with Miss Kwon. But because you saw her and because you're familiar with her and you know a little bit about the case, I just want to be careful and make sure that we don't—we don't have you sit through something that may trigger something in you that you won't be able to be fair.

"I'll tell you this—let me put it this way. If I were Mr. Jackson's attorney and if I were sitting in this room, and I had somebody that said, 'Oh, I did see her a lot when she would come into the donut store,' I would think, This isn't somebody I'd necessarily want hearing about this case.

"Again, it's nothing personal, but I do have a job to do in terms of making sure we can be fair and impartial. Okay?

"A GRAND JUROR: I'm curious to see the results.

"MR. DeFERRARI: I understand.

"Now, let me do one thing, sir. Can you do this for me? Can you write down your name—I don't want to use anybody's names on the record because the grand jurors are to remain confidential. So if you can write down your name and give it to Madam Forewoman, I'm going to have Madam Forewoman keep this, and that way I can relay to jury services and the judge what we've done.

"All right. Thank you very much, sir. I appreciate your time. You can leave your materials here. And then, again, we'll see you back here on—

"A GRAND JUROR: Monday?

"MR. DeFERRARI: —Monday, 9:00 o'clock a.m."

4

The deputy district attorney then asked, "Anyone else have any issues that would give them a bias in this case or prejudice such that they could not be fair and impartial? Anyone else at all? Okay. Excellent."

The deputy district attorney then handed out a draft indictment to the grand jury, responded to some questions regarding lesser included offenses and other issues, and read the jury opening instructions. Over the course of the next several days, the grand jury heard testimony by multiple witnesses and received documentary and other evidence, including exculpatory evidence. On April 6, 2017, the grand jury returned an indictment against petitioner. All 18 remaining grand jurors concurred in the finding of the indictment. The indictment included all the offenses, enhancements, and allegations that appeared in the complaint.[2]

### B. Motion to Dismiss the Indictment

On July 21, 2017, petitioner filed a motion to dismiss the indictment against him. He argued, among other things, that the grand jury proceedings denied him due process because the prosecution had subverted the independence of the grand jury and thwarted its protective role by treating it as "part of the prosecution team." On October 16, 2017, after the publication of the decision in *Williams*, petitioner filed a supplemental brief in support of his motion to dismiss the indictment based on that newly decided authority, arguing that the prosecution had violated petitioner's due process rights by improperly dismissing a grand juror for bias.

Following the October 27, 2017 initial hearing on the motion, the People filed an additional supplemental brief. They expressly "concede[d] that DDA DeFerrari committed an error by dismissing a grand juror from the proceedings based on bias." They argued, however, that removal of the grand juror did not substantially impair the grand jury's impartiality and independence because, unlike *Williams*, the district attorney did not supplant the court's role in the grand jury proceedings, and because the grand juror was dismissed in order to protect the petitioner's due process rights and prevent bias

---

[2] After the grand jury returned its indictment, the People moved to dismiss the complaint as duplicative, and the trial court granted that motion.

5

from influencing its deliberations. The People filed written materials that had been provided to the grand jury foreperson, which included "legal advice on how to identify and deal with a potentially biased grand juror." The pertinent portion of the materials, entitled "Foreperson's Procedure on Indictments," read as follows:

"The Foreperson then admonishes the Grand Jury by reading the *Admonition* portion of the form. This admonishment tells the jurors they should not participate if they can't act impartially. The admonishment is given at every indictment session. Some times [*sic*] jurors may be personally acquainted with the facts of the case, the victims, and even the defendants. If there is any question that a juror may not be able to consider the case impartially, he/she should not participate in the Grand Jury's deliberation nor in the vote for an indictment. If the juror, his family, or business associates are connected with the case in any way, that juror should be excluded from the hearings." The People argued that the foreperson's silence when the deputy district attorney removed the grand juror was not an indication that she did not understand her role or could not challenge that action, but only that she was "implicitly adopting the legal advice detailed in the written materials."

The court held a further hearing on the motion on December 1, 2017. At that hearing, the prosecutor again conceded error, but argued that there was no prejudice to petitioner because he had explicitly stated that the reason for his removing the grand juror was to protect the petitioner's rights. The court stated its intention to dismiss the indictment based on *Williams*, which it viewed as dispositive. It observed, however, that it had "reservations," and that if it were "writing on a clean slate, I might not agree with what *Williams* said about whether or not there was sufficient prejudice here to cause a dismissal." It indicated, however, that it would stay the order to give the prosecution time to file a writ or to refile another charge against petitioner in the form of a complaint.

On December 4, 2017, the trial court issued its order dismissing the indictment. The court viewed *Williams* as binding, although it again expressed reservations as to whether a showing of prejudice should be required. The court stayed its ruling until

6

December 15, 2017.  On December 15, however, after the California Supreme Court granted review in *Williams*, the court vacated its order.

On February 26, 2018, following the submission of further briefing on other issues, the court issued a lengthy order denying petitioner's statutory and nonstatutory motions to dismiss the indictment.  As to the issue before us, the court opined that "the determination in *Williams* to order dismissal of the indictment without reference to whether the defendant had demonstrated specific facts demonstrating prejudice incorrectly interpreted applicable law."  After discussing federal and state authority, the court concluded that "where grand jury errors are raised before trial, the trial court must review the alleged errors for a showing of prejudice except in those rare cases where the errors so compromise the structural protections of the grand jury as to make the grand jury proceedings fundamentally unfair . . . ."  It disagreed with *Williams*'s " 'one size fits all' approach," which it saw as "imposing a remedy that pre-supposes prejudice in all instances no matter what the facts of the excusal might be."  The trial court found "the record is clear as to what happened and it is equally clear that the excusal of the single grand juror in this case appears to have been motivated by the prosecutor's concern that the defendant should not be indicted by a grand jury that had a member who likely was excusable for cause because he was biased against the defendant."  Observing that the grand jury had unanimously voted to indict, the court found "no indication in the record that the grand jury had any serious questions about the strength of the evidence presented to it or that the prosecutor had somehow dictated how they should vote."  The court accordingly found that "there is no reasonable probability that the excusal of the grand juror 'substantially influenced the grand jury's decision to indict' [citation]," and "[t]he record does not support finding of prejudice."  The trial court denied petitioner's request for a stay of its order.

Petitioner sought review in this court by filing a petition for writ of mandate or prohibition.  We granted petitioner's request for an immediate, temporary stay of trial court proceedings, pending further order of the court.  On April 5, 2018, we issued an order to show cause why the relief prayed for in this proceeding should not be granted as

7

to petitioner's claim that the prosecutor's excusal of a grand juror violated his due process rights. The People asked us to deem its previously filed informal opposition to the petition a written return to the order to show cause, and petitioner filed a traverse.

## II.  DISCUSSION

The People concede, as they did below, that by excusing a grand juror for cause, the prosecutor in this case violated section 939.5. Under that statute, it is the duty of the grand jury foreperson, not the prosecutor, to direct a biased juror to "retire." (§ 939.5.) We must decide: (1) whether that admitted statutory violation threatened the independence and impartiality of the grand jury, depriving petitioner of due process; (2) whether it deprived petitioner of a "substantial right"; and (3) if the answer to either question is in the affirmative, whether petitioner is required to show prejudice to obtain dismissal of the indictment.[3] We start by providing an overview of the relevant statutory provisions, and then turn to the parties' contentions.

### A.  Formation and Conduct of the Grand Jury

In the prosecution of a felony, the People may proceed either by indictment or information. (Cal. Const., art. I, § 14; §§ 682, 737.) "An indictment is an accusation in writing, presented by the grand jury to a competent court, charging a person with a public offense." (§ 889.) "Thus, under the statutory scheme, it is the grand jury's function to determine whether probable cause exists to accuse a defendant of a particular crime." (*Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1026.)

"Although the grand jury was originally derived from the common law, the California Legislature has codified extensive rules defining it and governing its formation and proceedings . . . ." (*Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1122.) Those rules appear in part 2, title 4, chapters 1–3, sections 888–939.91 of the Penal Code. The relevant statutes governing the formation and conduct of the grand jury are as follows.

---

[3] We agree with petitioner that the writ petition presents questions of law on an undisputed record that we review de novo.

8

"A grand jury is a body of the required number of persons returned from the citizens of the county before a court of competent jurisdiction, and sworn to inquire of public offenses committed or triable within the county." (§ 888.) In most counties, including the county in which this proceeding was commenced, the "required number of persons" is 19. (§ 888.2, subd. (c).)[4] Unlike a petit jury in a criminal case, however, a grand jury need not return an indictment by unanimous vote; in counties where the required number of grand jurors is 19, at least 12 grand jurors must concur. (§ 940.) Nor are all of the grand jurors required to attend every session of the grand jury, so long as the minimum number of jurors who heard all of the evidence concur in the indictment. (*People v. Fujita* (1974) 43 Cal.App.3d 454, 477 [indictment not invalid where "at least 12 grand jurors heard *all* the evidence"].)

Grand jurors are selected by the court with the assistance of the jury commissioner. (§§ 896, 903.1–903.4.) Persons are competent to act as grand jurors if they meet certain minimum qualifications. (§ 893.) "The qualifications for service as a grand juror in California are prescribed by statute and relate to matters such as citizenship, age, mental competency, intelligence, and character. (§ 893, subd. (a).) The trial court determines these qualifications by personal interview and examination. (§§ 896, subd. (a), 904.6, subd. (b).) An individual who is otherwise qualified is nevertheless deemed incompetent to serve only if he or she (1) is currently serving as a trial juror in another case; (2) has been discharged as a grand juror within the preceding year; (3) has been convicted of either malfeasance in office or any felony; or (4) is an elected public officer. (§ 893, subd. (b); Code Civ. Proc., § 203, subd. (a).)" (*Packer v. Superior Court* (2011) 201 Cal.App.4th 152, 163, fn. omitted (*Packer*).)

"Any person found qualified in accordance with the statutory factors must be accepted for service 'unless the court, on the application of the juror and before he is

---

[4] The required number is 23 in a county having a population exceeding 4 million, and 11 in a county having a population of 20,000 or less, upon the approval of the board of supervisors. (§ 888.2, subds. (a), (b).) The former provision currently refers only to Los Angeles. (See Cubit, *California Counties by Population* <https://www.california-demographics.com/counties_by_population> [as of July 24, 2018].)

9

sworn, excuses him from such service for any of the reasons prescribed in this title or in Chapter 1 (commencing with Section 190), Title 3, Part 1 of the Code of Civil Procedure.' (§ 909.) Code of Civil Procedure section 204 provides that a person who is otherwise eligible for service may be excused 'only for undue hardship, upon themselves or upon the public . . . .' (*Id.*, subd. (b).) The law also makes clear that '[n]o challenge shall be made or allowed to the panel from which the grand jury is drawn, nor to an individual grand juror, except when made by the court for want of qualification, as prescribed in Section 909.' (§ 910.)" (*Packer*, *supra*, 201 Cal.App.4th at p. 163.) The court appoints the foreperson. (§ 912.)

Once a grand jury and its foreperson have been selected, the grand jury may request the advice of the judge; otherwise the judge may not be present. (§ 934; *McGill v. Superior Court* (2011) 195 Cal.App.4th 1454, 1471, fn. 15.) Likewise, the grand jury may request the advice of the district attorney. (§ 934.) "The district attorney of the county may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable by the grand jury, and may interrogate witnesses before the grand jury whenever he thinks it necessary." (§ 935.)

Part 2, title 4, chapter 3 of the Penal Code contains the provisions governing the grand jury's conduct of investigations and its authority over its own proceedings. It provides that the grand jury meets in private; in general, no person other than the judge, district attorney, interpreter, or stenographic reporter is permitted to be present during the criminal sessions of the grand jury except the members and the witnesses actually under examination. (§ 939.) "No persons other than grand jurors shall be permitted to be present during the expression of the opinions of the grand jurors, or the giving of their votes, on any criminal or civil matter before them." (§ 939.) A subpoena requiring the attendance of a witness before the grand jury may be signed and issued by the district attorney, his or her investigator, or a judge. (§ 939.2.)

Section 939.5, the provision with which we are centrally concerned here, reads in full as follows:

"Before considering a charge against any person, the foreman of the grand jury shall state to those present the matter to be considered and the person to be charged with an offense in connection therewith. He shall direct any member of the grand jury who has a state of mind in reference to the case or to either party which will prevent him from acting impartially and without prejudice to the substantial rights of the party to retire. Any violation of this section by the foreman or any member of the grand jury is punishable by the court as a contempt." (§ 939.5.)[5] Thus, section 939.5 requires the foreperson to "direct" a juror to "retire" because of "a state of mind . . . which will prevent him from acting impartially and without prejudice to the substantial rights of the party"—that is, to excuse a juror for cause due to bias or prejudice. Under this statute, "[a]lthough the court's statutory authority to excuse potential grand jurors is limited by section 909, all grand jurors have a statutory duty to withdraw from serving on a particular case if they harbor a bias or prejudice against the defendant." (*Packer*, *supra*, 201 Cal.App.4th at pp.163–164; see also *McGill v. Superior Court*, *supra*, 195 Cal.App.4th at p. 1471 [noting that an "extremely important" protection extended by the grand jury procedure is that "grand jurors must be absolutely neutral"].) Section 939.5 provides a contempt remedy for any violation by the foreperson or any member of the grand jury who fails to comply with its mandate, but it is silent as to the remedy for the situation presented here, where the district attorney rather than the foreperson excuses a grand juror.

---

[5] We employ the term "foreperson" in lieu of the obsolete "foreman." (See *Hobby v. United States* (1984) 468 U.S. 339, 344 ["Centuries of usage, relating back to a day when women did not serve on juries, have embedded such terms in the law as in our daily vocabulary"].)

11

**B. *Kempley* Is Not Controlling**

At the outset, the People argue that the relief petitioner seeks—dismissal of the indictment—is barred by *People v. Kempley* (1928) 205 Cal. 441 (*Kempley*). We disagree.

In *Kempley*, the defendants, the district attorney and assistant district attorney of San Diego County, were charged and convicted of the crime of soliciting and accepting a bribe to "throw" a murder trial by withholding evidence from the jury hearing that case. (*Kempley*, *supra*, 205 Cal. at pp. 442–444.) The defendants moved to quash the indictment based on an offer of proof that, among other things, two grand jurors, "before they had heard any evidence, stated that they were going to indict the district attorney." (*Id.* at p. 446.) The Supreme Court held that absent specific statutory authority, the trial court was not empowered to set aside an indictment based on grand juror bias or prejudice. (*Id.* at pp. 446–448.) Our high court explained: "Prior to 1911 an indictment could be set aside upon any ground which would have been good ground for challenge either to the panel or to an individual grand juror on account of disqualification for bias. [Citations.] But in that year the provision of the code for the setting aside of the indictment on the ground of the bias of the grand juror was abolished. [Citation.] In view of the change in the law in 1911 it must be held that since that time the bias of a grand juror has not been a ground for setting aside an indictment." (*Id.* at pp. 447–448.)

Thus, "*Kempley* follows the general rule that in the absence of a statutory provision to the contrary, an indictment is not subject to dismissal on the ground that individual grand jurors harbored bias or prejudice against the defendant." (*Packer*, 201 Cal.App.4th at p. 165; accord *People v. Boehm* (1969) 270 Cal.App.2d 13, 23 ["it appears to be the law of this state that even if a grand juror be biased, such is not a ground for setting aside an indictment"]; *People v. Shepherd* (1962) 200 Cal.App.2d 306, 314, overruled on another ground in *People v. Jackson* (1963) 59 Cal.2d 468, 470 [same].)

Contrary to the People's contention, *Kempley* does not control the instant case, which involves no claim of grand juror bias or prejudice. Rather, petitioner here raises an

entirely different claim: that the prosecutor's *removal* of a potentially biased juror deprived him of his due process right to an impartial and independent grand jury. *Kempley* is inapposite.[6]

### C. Due Process Challenge to the Indictment

Petitioner's central claim is that the prosecutor's action in excusing the grand juror for cause in the presence of the other grand jurors impaired the grand jury's independence and impartiality, in violation of his due process rights. The People, in response, acknowledge that an indictment may be set aside if grand jury proceedings fail to comport with due process. However, they assert that the prosecutor's error here was a mere "technical violation" that did not constitute a due process violation. We first review the authority bearing on the nature and extent of a defendant's due process rights in the context of grand jury proceedings, and then turn to analogous decisions in *Williams* and out-of-state authority.

---

[6] Although we conclude that *Kempley* is inapplicable, we note that the evolution of constitutional law in the nine decades since it was decided calls into serious question its continued validity. *Kempley* turned largely on the wording of section 995, which the court assumed supplied the only grounds for setting aside an indictment. (See also *Cereghino v. Superior Court* (1960) 177 Cal.App.2d 328, 331 ["the common-law unimpeachability of a grand jury indictment has been adhered to in California save as our statutes permit attack upon specific statutory grounds"].) Since that time, however, the California Supreme Court has recognized that the manner in which grand jury proceedings are conducted may deprive a defendant of due process, independently requiring dismissal of the indictment. (See, e.g., *People v. Backus* (1979) 23 Cal.3d 360, 393 (*Backus*).) Further, our courts have recognized that an indictment or information also may be set aside on nonstatutory grounds. (See, e.g., *Stanton v. Superior Court* (1987) 193 Cal.App.3d 265, 271.) Thus, intervening authority has undermined *Kempley*'s original rationale. (See *Packer*, *supra*, 201 Cal.App.4th at pp. 169–170 [declining to decide continued vitality of *Kempley* holding]; see also *People v. Superior Court (Mouchaourab)* (2000) 78 Cal.App.4th 403, 429 ["In light of the development of an indicted defendant's rights to challenge the indictment and Supreme Court authority . . . , the two early cases relied on by the People have limited vitality today"].)

13

*1. Grand Jury Proceedings May Implicate a Defendant's Due Process Rights*

The California Supreme Court has recognized that "the manner in which grand jury proceedings are conducted may result in a denial of a defendant's due process rights, requiring dismissal of the indictment." (*Stark v. Superior Court* (2011) 52 Cal.4th 368, 417 (*Stark*).) The court stated further that the determination whether a defendant's due process rights have been violated depends on whether the error at issue "substantially impaired the independence and impartiality of the grand jury. [Citation.]" (*Ibid.*) None of the handful of cases in which courts have recognized that principle, however, addressed an issue analogous to the one before us.

Thus, in *Backus*, *supra*, 23 Cal.3d 360, the defendants sought to dismiss the indictment on the ground that extensive inadmissible evidence was presented to the grand jury in violation of their right to due process. (*Id.* at pp. 391–392.) The court noted it had previously assumed, but had found it unnecessary to decide, that "grand jury indictment procedures must comport with the demands of the due process clauses of both the federal and state Constitutions. [Citation.]" (*Id.* at p. 392.) It quoted approvingly from an earlier Court of Appeal opinion, vacated by a grant of review, holding that "the obligation of the prosecutor to assure independence, procedural regularity, and fairness in grand jury proceedings is compelled by due process: 'The grand jury's ability to safeguard accused persons against felony charges which it believes unfounded is an attribute of due process of law inherent in the grand jury proceeding; this attribute exists for the protection of persons accused of crime before the grand jury, which is to say that it is a "constitutional right;" any prosecutorial manipulation which substantially impairs the grand jury's ability to reject charges which it may believe unfounded is an invasion of the defendant's constitutional right . . . . When the prosecutor manipulates the array of evidence to the point of depriving the grand jury of independence and impartiality, the courts should not hesitate to vindicate the demands of due process.' " (*Ibid.*) Referring to its decision in that case, *Johnson v. Superior Court* (1975) 15 Cal.3d 248, which held that a prosecutor has a duty to reveal to the grand jury the existence of exculpatory

evidence of which he or she is aware,[7] the court reasoned, "If the grand jury cannot fulfill its obligation to act independently and to protect citizens from unfounded obligations [citation] when not advised of relevant exculpatory evidence, neither can it do so if it is invited to indict on the basis of incompetent and irrelevant evidence." (*Backus*, at p. 393.) It held that "when the extent of incompetent and irrelevant evidence before the grand jury is such that, under the instructions and advice given by the prosecutor, it is unreasonable to expect that the grand jury could limit its consideration to the admissible, relevant evidence [citation], the defendants have been denied due process and the indictment must be dismissed notwithstanding . . . section 939.6." (*Ibid.*)[8] On the facts before it, however, the court found no violation. (*Ibid.*)

In a number of cases following *Backus*, courts have assumed that errors in grand jury proceedings could implicate a defendant's due process rights. (See, e.g., *Stark*, *supra*, 52 Cal.4th at p. 417 [prosecutor's conflict of interest could violate due process]; *People v. Booker* (2011) 51 Cal.4th 141, 158 (*Booker*) [assuming for the sake of argument that trial court's failure to swear in the grand jury until midway through its proceedings violated the federal Constitution]; *Cummiskey v. Superior Court*, *supra*, 3 Cal.4th at p. 1022, fn. 1 [claims of instructional and other error regarding the manner in which the prosecutor conducted the grand jury proceedings implicate defendant's "due process rights under the relevant statutory and common law principles governing indictment by grand juries"];[9] *Mouchaourab*, *supra*, 78 Cal.App.4th at p. 424

---

[7] "The holding of the majority in *Johnson* was based on statutory grounds, namely the court's interpretation of section 939.7. The majority declined to consider the petitioner's due process arguments." (*Mouchaourab*, *supra*, 78 Cal.App.4th at p. 420.) The *Johnson* holding was later codified in section 939.71.

[8] Section 939.6, subdivision (b) then provided that "the grand jury shall not receive any evidence except that which would be admissible over objection at the trial of a criminal action, but the fact that evidence that would have been excluded at trial was received by the grand jury does not render the indictment void where sufficient competent evidence to support the indictment was received by the grand jury."

[9] None of the court's separate opinions in *Cummiskey* actually decided any due process issue, which was not squarely presented. (See *Cummiskey v. Superior Court*,

15

[defendant's due process right not to be indicted in the absence of a determination of probable cause by a grand jury acting independently and impartially in its protective role necessarily implied right to discovery of nontestimonial communications between prosecutor and grand jury]).  In none, however, did any court actually find a due process violation.

The most extensive discussion of these principles appears in *Packer*.  There, the petitioner sought writ relief from the trial court's order denying his motion to dismiss an indictment charging him with three counts of first degree murder and other offenses.  (*Packer*, *supra*, 201 Cal.App.4th at p. 156.)  He contended the indictment must be set aside on the ground of grand juror bias because one of the grand jurors worked for the county high tech task force, a government agency that analyzes computers, cell phones, and other electronic and cyber-related evidence collected by the sheriff's department in its investigation of criminal matters, and had handled potential evidence in the case.  (*Id.* at pp. 157–158.)  During the grand jury's proceedings, the foreperson asked the grand jurors whether they knew any of the named witnesses such that they would not be able to render an unbiased decision.  (*Id.* at p. 159.)  The grand juror in question responded that she knew one of the witnesses, the detective who had submitted to the task force the electronic items that were collected from the murder victims' residence and business.  In response to a question by the prosecutor, however, the juror said that nothing about her knowledge of the witness would make it difficult for her to render an unbiased decision in the case.  (*Ibid.*) The prosecutor then extensively questioned the grand juror to determine whether she had examined or reviewed the evidence in question, and determined that she had not, but had at most received a single computer and placed it in the evidence room.  (*Id.* at pp. 159-162.)  At the conclusion of the questioning, the grand

---

*supra*, 3 Cal.4th at p. 1039 (conc. & dis. opn. of Kennard, J.) ["Nor does petitioner contend that the indictment procedures denied her due process.  Her claims are grounded in California statutes governing grand jury proceedings, not in the state or federal Constitution"].)

16

juror again said there was nothing about her role that would make it difficult for her to render an unbiased decision in the case. (*Id.* at p. 162.)

The court first addressed the general rule, expressed in *Kempley*, that an indictment is not subject to dismissal on the ground that individual grand jurors harbored bias or prejudice against the defendant. The court observed that the rationale for that rule "lies primarily in the fact that '[a] grand jury operates as part of the charging process of criminal procedure, and its function is viewed as investigatory, not adjudicatory, in nature.' [Citations.]" (*Packer*, *supra*, 201 Cal.App.4th at p. 165.) Historically, moreover, " '[c]hallenges for bias, or for any cause other than lack of legal qualifications, are unknown as concerns grand jurors . . . . [¶] The basic theory of the functions of a grand jury, does not require that grand jurors should be impartial and unbiased. In this respect, their position is entirely different from that of petit jurors . . . . A grand jury does not pass on the guilt or innocence of the defendant, but merely determines whether he should be brought to trial. It is purely an accusatory body. This view can be demonstrated by the fact that a grand jury may undertake an investigation on its own initiative, or at the behest of one of its members. In such event, the grand juror who instigated the proceeding that may result in an indictment, obviously can hardly be deemed to be impartial, but he is not disqualified for that reason.' [Citations.]" (*Id.* at pp. 165–166.)

The court went on to address the question of whether a defendant has a right to an unbiased grand jury under the due process clauses of the state and federal Constitutions, one it viewed as unresolved under both federal and California law. (*Packer*, *supra*, 201 Cal.App.4th at pp. 166–167.) The court found no basis for applying *Backus* and the other due process authority discussed above, observing, "Nothing in the record before us suggests that the prosecutor manipulated the proceedings or otherwise acted in a manner that had any purpose or tendency to undermine Juror No. 2's ability or desire to act impartially. On the contrary, the prosecutor extensively questioned the juror to ensure that she did not possess information or have a mindset that would render her biased against Packer." (*Id.* at p. 168.) Ultimately, however, the court declined to decide

17

whether petitioner had a due process right to an unbiased grand jury because he failed to demonstrate that the grand juror in question was actually biased. (*Id.* at p. 169.)

### 2. *Williams v. Superior Court*

*Williams*, like this case, involved a due process challenge to a prosecutor's improper excusal of a grand juror. At the beginning of the grand jury's proceedings, the prosecutor excused one of the grand jurors for economic hardship, in the presence of the other grand jurors. (*Williams*, *supra*, 15 Cal.App.5th at p. 1054.) The proceedings continued (as here) with 18 jurors, and the petitioner and 2 codefendants thereafter were indicted by the vote of at least 12 grand jurors with multiple counts of robbery and other charges. (*Ibid.*) The petitioner filed a motion to dismiss the indictment under section 995, arguing that by dismissing a previously qualified grand juror for hardship, the prosecutor exceeded his authority, " 'usurped a judicial branch function,' " and " 'invaded the independent role of the grand jury.' " (*Id.* at p. 1055.) The trial court denied the motion, observing that although all parties agreed the deputy district attorney had " 'kicked off a juror improperly,' " that " 'technical violation' " of the statute did not rise to the level of a due process violation; further, the defendant had not shown any actual prejudice, since 12 or more jurors still would have voted for indictment. (*Ibid.*)

The Third District Court of Appeal framed the question before it as "whether a district attorney's improper granting of a hardship request is grounds for dismissing an indictment," a question it recognized was "one of first impression in California." (*Williams*, *supra*, 15 Cal.App.5th at p. 1058.) The petitioner argued that the prosecutor had interfered with the grand jury's independence in violation of his due process rights, requiring dismissal, and the court agreed. (*Id.* at pp. 1060–1062.) It rested its holding primarily on the prosecutor's improper usurpation of the court's authority to excuse grand jurors for hardship: "By deciding that Juror No. 15 should be excused for hardship, the deputy district attorney used the authority of the judicial branch. It is unclear from the limited record before us whether the superior court would have agreed that Juror No. 15 should have been excused for 'undue hardship.' (See Code Civ. Proc., § 204, subd. (b).) We will never know because the court never decided the issue. The fact that the excused

18

juror was not replaced suggests the court was not made aware of what happened, effectively preventing the drawing of another grand juror who might have impacted deliberations." (*Id.* at p. 1061.)

Further, in the court's view, the prosecutor's action necessarily influenced the grand jury itself: "The prosecutor's actions supplanted the court's role in the proceedings and, because the excusal colloquy took place in front of the other jurors, allowed the remaining jurors to mistakenly believe the prosecutor had legal authority to approve a hardship request. Thus, the deputy district attorney expanded his power over the grand jury proceedings and the grand jurors themselves. Instead of merely providing information or advice (§ 935), he asserted actual control over them." (*Williams*, *supra*, 15 Cal.App.5th at p. 1061.) The court reasoned that the district attorney's "improper use of judicial authority went to the very structure the Legislature has provided to keep these constitutional fixtures necessarily independent. [Citation.]" (*Id.* at p. 1062.) "We must, therefore, conclude that the deputy district attorney's improper excusal of Juror No. 15 and corresponding reduction of the required number of jurors substantially impaired the jury's independence and impartiality, and may have contributed to its determination that probable cause existed to accuse petitioner of the charged crimes." (*Ibid.*) Accordingly, the court issued a peremptory writ of mandate directing the superior court to grant petitioner's motion to dismiss the indictment. (*Ibid.*)[10]

---

[10] In its earlier unpublished opinion in *Avitia v. Superior Court*, *supra*, C082859, the same panel reached the opposite result, holding that a deputy district attorney's dismissal of a grand juror for bias outside the presence of the other grand jurors was not structural error, and that the petitioner had failed to demonstrate he was denied a substantial right or that the error substantially impaired the independence and impartiality of the grand jury.

### 3. Out-of-state Authority

Courts in other states have reached differing conclusions as to whether similar prosecutorial involvement in improperly excusing grand jurors warrants dismissal of an indictment.[11]

Thus, in *State v. Murphy* (N.J. 1988) 538 A.2d 1235, the prosecutors convened a grand jury to consider an alleged conspiracy to defraud various insurance companies. Before presenting evidence to the grand jury, a deputy attorney general identified for the grand jurors both the alleged perpetrators and the insurance companies that were victims of the purported fraud. Two of the grand jurors disclosed that they were currently employed by two of the insurance companies. Although the assignment judge supervising the grand jury was sitting and available in a nearby courthouse, the deputy attorney general did not inform the judge of the first juror's potential conflict of interest and possible bias, but instead, on his own initiative, excused the grand juror from sitting on the grand jury. (*Id.* at pp. 1236–1237.) One of the responsible deputy attorneys general then instructed the jury foreperson to speak off the record with the second juror in order to investigate his potential bias. The foreperson apparently conducted the inquiry in the presence of the other jurors, and reported back that the grand juror was reluctant to say whether he wished to remain on the grand jury, but said he would be " 'a little prejudice[d].' " The grand jurors took a vote among themselves, and decided to retain the juror. (*Id.* at p. 1237.)

The New Jersey Supreme Court held first that "the procedures established in New Jersey by statute and by rule to implement the constitutional right to indictment contemplate indictment by an unbiased grand jury." (*State v. Murphy*, *supra*, 538 A.2d at p. 1239.) It stated that New Jersey law did not clearly impose specific responsibility for inquiring into the potential bias or interest of prospective grand jurors, but found that the supervising court implicitly has the power and responsibility to determine the impartiality

---

[11] Where, as here, there is no published California decision that addresses the precise issue before us, out-of-state decisions may provide "useful guidance." (See *McArthur v. McArthur* (2014) 224 Cal.App.4th 651, 656.)

20

of grand jurors.  (*Id.* at pp. 1239–1241.)  The court opined that the conduct of the assigned deputy attorneys general in undertaking to resolve on their own the ability of the grand jurors to serve without bias or prejudice was improper:  "This should never happen again.  We believe that a prosecuting attorney has the obligation not only to note the existence of possible prejudice or bias on the part of a grand juror but to disclose such circumstances to the court and to afford the court the opportunity to preserve the impartiality of the grand jury proceedings.  Accordingly, we now hold that, as an officer of the court, the prosecuting attorney has a responsibility to bring to the attention of the presiding judge any evidence of partiality or bias that could affect the impartial deliberations of a grand juror. [Citations.]  We hold further that upon such a disclosure the court should determine whether such partiality or bias exists and whether it justifies excusal of the grand juror from the particular case being considered or from the panel." (*Id.* at p. 1241.)

Turning to the question of remedy, however, the court held that the continued presence of the second juror, and the failure of the deputy attorneys general to follow the correct procedure in the administration of the grand jury process, did not "demonstrate a bias in the charging process that requires dismissal of the indictment and reversal of the judgment of conviction entered thereon."  (*State v. Murphy*, *supra*, 538 A.2d at p. 1241.) In short, the court found that "although the proper procedures were not followed here, their absence neither tainted the indictment nor deprived the defendant of fundamental fairness during the grand jury proceedings."  (*Id.* at p. 1236.)

In *De Leon v. Hartley* (N.M. 2013) 316 P.3d 896 (*De Leon*), in contrast, the New Mexico Supreme Court reached the opposite result, on reasoning closely akin to that in *Williams*.  There, after the trial court received a list of potential grand jurors, the court clerk deleted some names based on hardship reports she received, and the remaining grand jurors were then convened for an orientation session and to be sworn in.  The process of selecting and excusing jurors for individual grand jury sessions was then transferred to the district attorney's office with no apparent further involvement by the court.  (*Id.* at pp. 897–898.)  Although the district attorney's office denied any

21

involvement in excusing grand jurors, several grand jurors were excused, and the list of grand jurors used by the district attorney's office contained numerous notations suggesting "active involvement by someone within the district attorney's office in deciding who would ultimately serve at the session of the grand jury" that indicted petitioner. (*Id.* at p. 898.)

The New Mexico Supreme Court issued a writ directing the trial court to quash the indictment, holding that the grand jury selection process used in the case was inappropriate. (*De Leon*, *supra*, 316 P.3d at p. 898.) The court reasoned that "if the grand jury is to play any role at all as a credible, independent entity charged with determining whether the prosecution has probable cause to go forward with criminal charges against the accused, the grand jury must remain free of the taint that would come from being perceived to be under the complete and absolute control of the prosecutor." (*Id.* at p. 899.) It explained, "It is for the district court, and the district court alone, to decide who shall serve as grand jurors. To permit the district attorney to take over that role is to sacrifice any perception that the grand jury is an entity distinct from the prosecutor that is capable of serving as a barrier against unwarranted accusations." (*Ibid.*) The court pointed out that many years earlier, an appellate court had condemned allowing the district attorney to play such a "pivotal role" in the selection of grand jury panels. (*Ibid.*) It disagreed, however, with that court's holding that a showing of fraud or prejudice is necessary before a court must dismiss an indictment due to irregularities in the grand jury process. (*Id.* at pp. 899–901.) The court emphasized the importance of ensuring that grand juries remain independent of the prosecutor: "The manner in which grand jurors are selected and excused goes to the very heart of how the public views the integrity of the grand jury system. The fact that anyone even casually acquainted with our grand jury system has heard of the indictment of the proverbial ham sandwich demonstrates the need to enforce those few provisions that ensure at least some degree of separation between the prosecutor and the grand jury. [Citation.]" (*Id.* at p. 901.) Moreover, because virtually no record was made of the informal excusal process that the district attorney apparently used, it would be "an almost insurmountable burden" for

petitioner to show prejudice. (*Ibid.*) Accordingly, the trial court should have quashed the indictment. (*Ibid.*)

### 4. *Petitioner's Due Process Rights Were Not Violated*

Petitioner argues that as in *Williams*, the prosecutor's improper excusal of a grand juror here substantially impaired the independence and impartiality of the grand jury. He asserts that the prosecutor's action "constituted undue interference in the judicial and independent functioning of the grand jury, resulting in a grand jury that was no longer an independent body. The appropriate remedy for such due process violation is dismissal of the Indictment." Although the issue is a close one, ultimately we are not persuaded. In our view, petitioner's position places undue weight on a relatively minor error that, at least on this record, did not significantly interfere with or affect the grand jury's independent investigatory function.

A defendant's due process rights are violated by an irregularity in grand jury proceedings only if the error "substantially impair[ed] the grand jury's ability to reject charges which it may believe unfounded" (*Backus*, *supra*, 23 Cal.3d at p. 392) or otherwise "compromise[d] the grand jury's ability to act independently and impartially in reaching its determination to indict based on probable cause." (*Mouchaourab*, *supra*, 78 Cal.App.4th at p. 435.) In other words, the due process inquiry focuses on the grand jury's independence and impartiality, not in the abstract, but rather in carrying out its key functions. On the record before us, there is no reason to believe that the independence of the grand jury was compromised. That the prosecutor—before the grand jury had heard any witness testimony—excused a single potentially biased grand juror, in no way undermined the grand jury's authority or ability to call witnesses, issue subpoenas, ask questions, listen to and follow instructions, engage in deliberations, or reach a decision to indict based solely on the evidence presented to it. (See also, e.g., *Booker*, *supra*, 51 Cal.4th at p. 158 [trial court's failure to swear in grand jury until midway through its proceedings "did not have a structural impact on those proceedings, as the grand jury, once properly sworn, received sufficient evidence to support the indictment"].) In contrast, *Backus*, the sole case in which our high court found a *potential* due process

23

violation, involved the prosecutor's presentation to the grand jury of voluminous inadmissible evidence, alleged misconduct that plausibly could have affected the outcome of the grand jury's deliberations.

To be sure, we recognize the legitimacy of the concern, expressed in *Williams* and similar cases, that "[a]lthough the prosecution participates in the grand jury proceedings, it is essential to the proper functioning of the grand jury system that the grand jury operate independently of the prosecution. [Citation.] The grand jury is viewed ' "as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor" ' and its mission ' "is to clear the innocent, no less than to bring to trial those who may be guilty." ' [Citation.]" (*Berardi v. Superior Court* (2007) 149 Cal.App.4th 476, 490.) On the facts presented here, however, we do not see how the prosecutor's conduct realistically be said to have significantly affected the grand jurors' perception or understanding of their own independence. After all, grand jurors are lay people, who can safely be assumed to be unfamiliar with the foreperson's statutory responsibilities and who, as a practical matter, look primarily to the prosecutor to present evidence, provide instructions, and answer their questions. The prosecutor's brief colloquy with a juror resulting in his excusal at the outset of the proceedings, in our view, is unlikely to have materially changed that relationship or the grand jurors' understanding of their role, particularly given the prosecutor's emphasis (discussed below) on their independent role and authority.

The situation before us here differs in significant respects from those presented in *Williams* and other cases. Here, a prosecutor improperly excused a single grand juror for potential bias or prejudice, thereby infringing on the statutory authority of the grand jury foreperson. In *Williams* and each of the other cases discussed, in contrast, the prosecutor usurped the authority of the *court* to excuse grand jurors—a usurpation that raised concerns, not present here, about the separation of powers. Indeed, in *De Leon*, the court apparently left the entire process of the selection and excusal of grand jurors to the district attorney's office, which the court understandably condemned as an improper

24

delegation of the courts' "core supervisory responsibilities over grand jury proceedings." (*De Leon*, *supra*, 316 P.3d at p. 901.)

We close by observing that nothing we say here should be taken as approving the prosecutor's actions. The prosecutor should have been familiar with the provisions governing the grand jury proceedings, and he should not have taken it upon himself to excuse the grand juror. Instead, he should have advised the grand jury foreperson to do so, or stepped out of the grand jury room to allow her to exercise her authority. Alternatively, the prosecutor could have asked the supervising judge to advise the grand jury on how to handle the situation, or suggested that the foreperson seek such advice. In undertaking himself to excuse the juror, the prosecutor violated section 939.5—a violation that should not be repeated. But no case suggests that *any* violation of the statutory scheme governing grand jury proceedings rises to the level of a constitutional violation warranting dismissal of the indictment, nor there is any reason on the record before us to believe that the violation had any effect in the real world on the grand jury's functioning or deliberations. For these reasons, we find no merit in petitioner's due process claim.

### D. Petitioner Was Not Deprived of a "Substantial Right"

Petitioner also contends in his reply brief that the prosecutor's conduct deprived him of a "substantial right."[12] That fallback argument, which adds little if anything to the due process analysis, lacks merit.

Section 995 provides that an indictment shall be set aside upon the defendant's motion if the defendant was indicted without reasonable or probable cause or the indictment "is not found, endorsed, and presented as prescribed in this code." (§ 995, subd. (a)(1)(A), (B).) A different subdivision of section 995 that governs motions to set aside a criminal information provides that an information shall be set aside if "before the

---

[12] We generally will not consider issues raised for the first time in a reply brief. (*People v. Adams* (1990) 216 Cal.App.3d 1431, 1441, fn. 2.) Here, however, after the court issued its order to show cause and petitioner filed his reply brief, the People asked us to consider its previously filed informal opposition as the return to the petition, thereby foregoing the opportunity to respond to this new argument.

25

filing [of the information] the defendant had been committed without reasonable or probable cause." (§ 995, subd. (a)(2)(B).) Cases decided under the latter subdivision explain, " ' "An information, of course, will not be set aside merely because there has been some irregularity or minor error in procedure in the preliminary examination. [Citation.] But where it appears that, during the course of the preliminary examination, *the defendant has been denied a substantial right*, the commitment is unlawful within the meaning of section 995, and it must be set aside upon timely motion. [Citations.]" ' [Citation.]" (*People v. Standish* (2006) 38 Cal.4th 858, 882.) However, "the superior court may not set aside the information on the basis of such an error in the absence of a determination that the error reasonably might have affected the outcome of the preliminary examination." (*Ibid.*) Some errors such as denial of the right to counsel by their nature constitute a denial of a substantial right. (*Ibid.*) In contrast, an error such as failure to grant own recognizance release pending a preliminary examination in violation of section 859b does not violate a defendant's substantial right because, "unlike the absence of counsel, for example, the error is not inherently prejudicial. The error does not implicate a core right *at the preliminary examination itself*." (*Id.* at p. 883.)

Petitioner cites no reported case, and there is none of which we are aware, holding that this rule, which governs motions to set aside a criminal information following a preliminary examination, also applies to motions to set aside a grand jury indictment. The two procedures differ in important respects. At a preliminary hearing, "[s]ubstantial rights within the meaning of section 995 have been held to include the right to counsel, cross-examination and the presentation of an affirmative defense at the preliminary hearing, and substantial procedural rights such as the statutory right to complete the hearing in one session and to have a closed hearing. [Citations.]." (*People v. Pennington* (1991) 228 Cal.App.3d 959, 964; see also, e.g., *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 523 (*Pompa-Ortiz*) [collecting cases]; *People v. Anderson* (2015) 234 Cal.App.4th 1411, 1416 [right to representation by competent counsel at preliminary hearing and arraignment].) In contrast, virtually none of these rights applies in grand jury

26

proceedings: neither the defendant nor counsel has any right to be present, to cross-examine witnesses, or to present an affirmative defense.

In any event, even assuming the target of a grand jury proceeding could move to set aside the indictment on the ground that he or she was deprived of a substantial right, petitioner has not established such a claim here. A district attorney's dismissal of a biased juror is not "inherently prejudicial." While section 939.5 provides that the foreperson must dismiss biased jurors rather than the district attorney, this is not a "core right" analogous to the right to counsel.

The authority upon which petitioner relies is inapposite. In *Dustin v. Superior Court* (2002) 99 Cal.App.4th 1311, the defendant was indicted by a grand jury on a charge of murder with special circumstances. He moved to set aside the indictment on the ground that the prosecutor affirmatively ordered the court reporter to leave while he made his opening and closing arguments before the grand jurors, thereby depriving the defendant of a transcript of those proceedings. (*Id.* at p. 1315.) The court of appeal majority held that because the charges carried the death penalty, the defendant was entitled by statute (§ 190.9, subd. (a)(1)) to a complete transcript of the entire grand jury proceeding. (*Id.* at p. 1323.) Finding the case "analogous to a violation of a substantial right at a preliminary hearing" (*id.* at p. 1325), the majority held that the People's decision to deny the defendant a recordation of all the proceedings "amounted to a denial of a substantial right." (*Id.* at p. 1328.) The court explained that "the intentional failure to record the proceedings as mandated by statute in death penalty cases resulted in the denial of 'a substantial right,' i.e., the ability to raise prosecutorial misconduct and to receive meaningful review of any alleged error." (*Id.* at p. 1326.) "Under these circumstances," it concluded, "defendant does not need to show he suffered prejudice beyond his right to the records [citation], and prejudice is presumed. [Citation.]" (*Ibid.*) *Dustin* is not remotely comparable to the instant case, where the prosecutor's excusal of

27

the grand juror was entirely on the record and did not deprive petitioner of any cognizable right.[13]

### E. Petitioner Was Not Prejudiced by the Prosecutor's Statutory Violation

Even assuming that the prosecutor's action violated petitioner's due process rights or denied him a substantial right, petitioner was not prejudiced. Petitioner contends that the appropriate remedy for the statutory violation is dismissal of the indictment, with "no showing of prejudice required." The People disagree, asserting that petitioner has the burden to show prejudice, and that he failed to demonstrate how he was prejudiced by the violation of section 939.5. We agree with the People's position.

#### 1. Petitioner Has the Burden to Show Prejudice

Although California courts have recognized that grand jury proceedings implicate defendants' due process rights, as discussed above, no case has actually found a due process violation arising out of an irregularity in grand jury proceedings. That result is due in large part to defendants' inability to carry their burden to establish prejudice. As our high court has explained, "Under federal and state law, irregularities in grand jury proceedings generally are reviewed for prejudice. [Citations.] Isolated exceptions to this general rule, not applicable to defendant's case, have included cases involving discrimination in the composition of the grand jury based on the grand jurors' race [citation] or gender [citation]." (*Booker*, *supra*, 51 Cal.4th at p. 156; see also *Packer*, *supra*, 201 Cal.App.4th at p. 169 ["Even those courts that have recognized a defendant's due process right to challenge an indictment on the ground of grand juror bias have concluded that the defendant 'bears a heavy burden of showing actual bias and prejudice.' [Citation.] Bias cannot be presumed."].)

---

[13] *Moon v. Superior Court* (2005) 134 Cal.App.4th 1521, which petitioner also cites, did not even involve grand jury proceedings, and is even less helpful to his position. There, the court held that the trial court's error in denying a defendant's motion to represent himself at the preliminary hearing warranted setting aside the information without any showing of prejudice. (*Id.* at pp. 1531–1534.) Thus, *Moon* involved the right of self-representation, "a fundamental constitutional right bearing on the structural integrity of the trial process." (*Id.* at p. 1533.) No such right is involved here.

28

Thus, in *Backus*, our high court held that a prosecutor's presentation of extensive incompetent and irrelevant evidence to a grand jury could deny a defendant due process, requiring dismissal of the indictment. (*Backus*, *supra*, 23 Cal.3d at p. 393.) On the facts before it, however, the court concluded that defendants were not prejudiced because "[t]he nature and extent of the inadmissible evidence was not such that it may have compromised the independence of the grand jury and contributed to the decision to indict." (*Ibid.*) Similarly, in *Packer*, the court declined to decide whether the petitioner had a due process right to an unbiased grand jury because he failed to demonstrate that the juror he claimed should have been excluded was actually biased. (*Packer*, *supra*, 201 Cal.App.4th at p. 169.)

Petitioner asserts, relying on *Pompa-Ortiz*, *supra*, 27 Cal.3d 519, that prejudice need be shown only when grand jury proceedings are challenged after trial, and that he is entitled to relief without any showing of prejudice because he has challenged the indictment at the pretrial stage. However, *Pompa-Ortiz* does not support his position. There, the trial court granted the People's request to close the preliminary hearing on a rape charge against the defendant. The California Supreme Court held that the defendant had a statutory right to a public preliminary examination and that denial of that right rendered his commitment unlawful within the meaning of section 995. (27 Cal.3d at pp. 523–526.) However, the court held that the trial court's error in denying the defendant's section 995 motion did not compel reversal of the judgment of conviction because the defendant made no showing that he was denied a fair trial or otherwise suffered prejudice from the closure of the preliminary examination. (*Id.* at p. 530.) Reconsidering its prior per se reversal rule, the court held that "[h]enceforth irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination." (*Id.* at p. 529.) The Supreme Court later held that this requirement to show actual prejudice applies equally to grand jury proceedings. (*People v. Towler* (1982) 31 Cal.3d 105, 123 & fn. 9

29

["The reasoning of *Pompa-Ortiz* applies with equal force in the grand jury context. Because [defendant] fails to demonstrate that the alleged errors before the grand jury deprived him of a fair trial or otherwise resulted in any actual prejudice relating to his conviction, reversal is not warranted"].)

Petitioner bases his argument that no showing of prejudice is required here on the following language from *Pompa-Ortiz*: "The right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities. At that time, by application for extraordinary writ, the matter can be expeditiously returned to the magistrate for proceedings free of the charged defects." (*Pompa-Ortiz*, *supra*, 27 Cal.3d at p. 529.) Our high court has repeated this language with apparent approval. (See *Booker*, *supra*, 51 Cal.4th at p. 157 ["no showing of prejudice is required for pretrial challenges to grand jury proceedings but is required for posttrial challenges"]. It has recognized, however, that the language in question is nonbinding dictum: "*Pompa-Ortiz* does not state a general proposition. Instead, the dictum in question merely notes that pretrial challenges to criminal preliminary examination procedures *may*, in some circumstances involving jurisdictional error that are not applicable here, warrant relief without a showing of prejudice. [Citation.]" (*Reilly v. Superior Court* (2013) 57 Cal.4th 641, 652–653.)

For example, even where a defendant shows in a pretrial motion that the prosecutor failed to disclose to the grand jury exculpatory evidence of which he or she is aware, in violation of section 939.71, the defendant must show "substantial prejudice" to support a dismissal—i.e., that "it is reasonably probable that the grand jury would not have found probable cause to indict absent the disclosure error." (*Berardi v. Superior Court*, *supra*, 149 Cal.App.4th at p. 481.) Thus, "[t]he *Pompa-Ortiz* rule applies only if the right of which the defendant has been deprived is a *substantial* right [citation], as established by a showing that the error, even though not *necessarily* prejudicial, might reasonably have affected the hearing's outcome. [Citations.]" (*People v. Anderson*, *supra*, 234 Cal.App.4th at p. 1421, fn. 14.) For the reasons we discuss above, this is not such a case.

Federal law, as *Booker* observed (51 Cal.4th at p. 156), is to the same effect. Under federal law, as under California law, the general rule is that a trial court "may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." (*Bank of Nova Scotia v. United States* (1988) 487 U.S. 250, 254.) In *Bank of Nova Scotia*, the district court found that the prosecutors had engaged in numerous instances of misconduct before the grand jury, including improperly disclosing grand jury materials, publicly identifying the targets and the subject matter of the grand jury investigation, causing Internal Revenue Service agents to mischaracterize testimony given in prior proceedings, and providing " 'pocket immunity' " (immunity granted on representation of a prosecutor rather than by order of a judge) to 23 grand jury witnesses. (*Id.* at pp. 257–258, 260–262.) The district court dismissed the indictment, but the Court of Appeals reversed, holding that the prosecutors' misconduct did not significantly infringe on the grand jury's ability to exercise its independent judgment. (*Id.* at pp. 253–254.)

The Supreme Court affirmed, holding that a district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant. (*Bank of Nova Scotia v. United States*, *supra*, 487 U.S. at p. 255.) The prejudice inquiry focuses on whether "there was any misconduct by the prosecution that otherwise may have influenced substantially the grand jury's decision to indict, or whether there is grave doubt as to whether the decision to indict was so influenced." (*Id.* at p. 259.)[14] Although the court found several instances of misconduct "might be relevant to an allegation of a purpose or intent to abuse the grand jury process," the record established they could not

---

[14] In *Vasquez v. Hillery* (1986) 474 U.S. 254, the high court created an exception to this general rule, holding that "purposeful racial discrimination in the selection of grand jurors, in violation of the constitutional guarantee of equal protection, requires reversal of the ensuing conviction without a showing of prejudice. [Citations.]" (*People v. Carrington* (2009) 47 Cal.4th 145, 179.) "The high court has included among the rare forms of constitutional errors held not to be subject to harmless error analysis the 'unlawful exclusion of members of the defendant's race from a grand jury.' [Citation.] That court, however, has not extended the requirement of automatic reversal to other defects in the grand jury process. [Citations.]" (*Ibid.*)

have affected the charging decision. (*Id.* at pp. 259–260.) Further, the court found no evidence that any of the remaining instances of prosecutorial misconduct "substantially affected the grand jury's evaluation of the testimony or its decision to indict" or "raise[d] a substantial question, much less a grave doubt, as to whether they had a substantial effect on the grand jury's decision to charge." (*Id.* at pp. 261, 263.) The court observed that errors of the kind alleged in the case "can be remedied adequately by means other than dismissal," including contempt of court, the initiation of disciplinary proceedings against a prosecutor, or chastising the prosecutor in a published opinion. "Such remedies allow the court to focus on the culpable individual rather than granting a windfall to the unprejudiced defendant." (*Id.* at p. 263.) Accordingly, the district court should not have dismissed the indictment. (*Id.* at pp. 263–264.)[15]

---

[15] Federal courts continue to adhere to this rule. (See, e.g., *United States v. Cessa* (5th Cir. 2017) 861 F.3d 121, 141, fn. omitted [" '[D]ismissal of the indictment is appropriate only "if it is established that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations.' [Citation.] Put another way, '[w]hether or not prosecutorial misconduct prejudiced a defendant depends on whether it affected the grand jury's decision to indict.' [Citation.]"]; *United States v. Calhoun* (10th Cir. 2015) 796 F.3d 1251, 1255 [" '[E]ven if [a defendant] can show that an important privilege or right . . . was violated during the grand jury stage of a criminal prosecution, the indictment will not be dismissed unless [defendant] can show prejudice.' [Citation.']"]; *U.S. v. Hillman* (10th Cir. 2011) 642 F.3d 929, 934 ["A grand jury's independent judgment is compromised when the prosecutor's misconduct invades the grand jury's independent deliberative process and substantially affects its decision to indict. [Citation.]"]; *United States v. Lamantia* (7th Cir. 1995) 59 F.3d 705, 707–710 [grand juror's unauthorized disclosure of and attempt to sell information concerning grand jury investigations to subjects did not significantly infringe on grand jury's ability to exercise independent judgment].)

## 2. Petitioner Was Not Prejudiced

Thus, this case is governed by the general rule that to obtain dismissal of the indictment, petitioner is required to show prejudice. However, there is no substantial evidence that petitioner was actually prejudiced by the prosecutor's improper excusal of the grand juror. Rather, as the People urge, all of the available evidence is to the contrary.

Excusal of the grand juror did not prejudice petitioner. To the contrary, the record shows that, if anything, the excused grand juror was arguably unfavorable to the defense, since he had met the victim several times and had read newspaper accounts of her rape and murder. Further, while the prosecutor excused the prospective juror in the presence of the other grand jurors, he did so with the stated objective—communicated to the entire grand jury—of ensuring a fair and impartial proceeding: "I want to make sure, again, that what we do here is transparent and has integrity and stands up to scrutiny." And again: "I just want to be careful and make sure that . . . we don't have you sit through something that may trigger something in you that you won't be able to be fair."

Moreover, the record does not support petitioner's claim that the prosecutor undermined the independence and impartiality of the grand jury by assuming actual control over the grand jury or by leading it to believe that he had the authority to direct its activities. To the contrary, the prosecutor emphasized to the grand jury that any indictment required probable cause and the grand jury had to act independently and impartially in reaching its own determination on that issue.[16] (*See United States v. Cessa*,

---

[16] For example, the prosecutor emphasized the grand jury's role as an independent investigative body, including its ability to investigate other potential targets, to subpoena additional records or other evidence, and to request further investigation of exculpatory evidence. And he made clear that the draft indictment he provided to the jurors was just that: "This is your investigation. This is your grand jury. So if you don't like these charges, if you want other charges, if you want to consider other things, just tell me. This is a draft. [¶] I've constructed it in a way that I think is logical in terms of how a case should proceed, but I'm wide open, and I want you—again, this is your investigation. This is your fact-finding endeavor."

33

*supra*, 861 F.3d at p. 142 [no prejudice found from the prosecutor's improperly informing grand jury of defendant's prior indictment and conviction, where prosecutor explicitly instructed the grand jury, " 'your job is still to look at this case fresh' " and that each indictment had " 'to be considered independently,' " thereby emphasizing the grand jury's independent role].)  Finally, of course, the remaining 18 grand jurors voted unanimously to indict, when only 12 votes were required.  Under any applicable standard, therefore, petitioner was not prejudiced.  (See *State v. Apodaca* (N.M.Ct.App. 1987) 735 P.2d 1156, 1159 ["We note that we do not condone the practice of prosecutors discharging grand jurors or selecting alternates.  However, we are persuaded that the prosecutor in this case was attempting to be fair to defendant.  There is no hint of malicious overreaching, subverting the grand jury proceedings, and there has been no showing of disadvantage to defendant."].)

 *People v. Jablonski* (2006) 37 Cal.4th 774 rejected a closely similar claim of prejudice arising from a different violation of the statutory grand jury procedures.  There, several deputy district attorneys (who were apparently observing the proceeding for training purposes) were present at some part of the grand jury proceedings without playing any part in them.  The trial court found their presence violated section 939, which prohibits anyone other than the grand jurors, witnesses, and others participating in the proceedings from being present.[17]  On appeal, the defendant contended the violation of the grand jury secrecy provision embodied in section 939 amounted to a violation of his state and federal due process rights, and asserted these violations constituted a structural error in the grand jury proceedings that required reversal without reference to prejudice.  (*People v. Jablonski*, at p. 799.)  Our Supreme Court rejected the argument, holding

---

  [17] "Although the district attorney is allowed to be present at grand jury proceedings to serve particular functions in aid of the proceedings (§ 935), the trial court agreed with defendant that the presence of deputy district attorneys who are not fulfilling this function was a violation of section 939."  (*People v. Jablonski*, *supra*, 37 Cal.4th at p. 799.)  The Supreme Court agreed.  (See *id.* at p. 800 ["We assume . . . that the trial court correctly concluded [the deputy district attorneys'] presence was a technical violation of section 939"].)

squarely that "[w]here, as here, irregularities in the grand jury proceedings are challenged on appeal, a showing of actual prejudice is required. [Citation.]" (*Id.* at p. 800.) "Thus, defendant must show the 'alleged errors before the grand jury deprived him of a fair trial or otherwise resulted in any actual prejudice relating to his conviction' before reversal on the ground of such irregularity is warranted. [Citation.]" (*Ibid.*) The defendant asserted—in terms closely similar to petitioner's contentions here—that "the unauthorized presence of the deputy district attorneys had 'an inherent tendency to be coercive and to compromise the grand jury's independence.' " (*Ibid.*) The court rejected that assertion as "purely speculative," finding it failed to comport with the actual prejudice requirement. (*Ibid.*) The court found *Vasquez*, involving racial discrimination in the selection of a grand jury, inapposite: "The presence of unauthorized individuals at grand jury proceedings does not have a structural impact on those proceedings comparable to that of discriminatory selection of grand jurors, nor is such error insusceptible of review for actual prejudice such that prejudice must be presumed. [Citations.]" (*People v. Jablonski*, at p. 801.)

We believe that the same conclusion follows here: a prosecutor's excusal of a grand juror does not have a structural impact on the proceedings, nor does it significantly compromise the grand jury's independence. Because petitioner failed to show prejudice, and cannot do so on the record before us, the trial court properly denied his motion to dismiss the indictment.

## III. DISPOSITION

The petition for writ of mandate and/or prohibition is denied.

35

_____
Schulman, J.[*]

We concur:

_____
Streeter, Acting P.J.

_____
Reardon, J.

[*]Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Jackson v. Superior Court for the County of Contra Costa* (A153818)

36

Trial Court: Contra Costa County Superior Court

Trial Judge: Hon. Charles B. Burch

Counsel for Petitioner: Evan Isaac Kuluk, Deputy Public Defender

Elizabeth K. Barker, Assistant Public Defender

Counsel for Respondent: No appearance

Counsel for Real Party in Interest: Xavier Becerra
Attorney General of California

Gerald A. Engler
Chief Assistant Attorney General

Jeffrey M. Laurence
Senior Assistant Attorney General

Laurence K. Sullivan
René A. Chacón
Supervising Deputy Attorneys General